Merrimack County Probate Court
No. 7168

IN THE MATTER OF JOHN H. SARGENT

February 27, 1976

*Michael E. Chubrich, Eugene Z. Dubose* (of Illinois) and *Frank W. Peyser (Mr. Chubrich* orally) for the plaintiff.

*Warren B. Rudman,* attorney general, and *Roger G. Burlingame,* assistant attorney general *(Mr. Burlingame* orally), for the State.

PER CURIAM.    Upon an agreed statement of facts, the following question of law was reserved and transferred prior to trial from Merrimack County Probate Court *(Cushing,* J.):

> "Can the State of New Hampshire recover from a patient, pursuant to RSA Chapter 8 (as amended), board and care expenses furnished to one committed to the New Hampshire Hospital pursuant to RSA 607:3 (repealed and re-enacted as RSA 651:9; see laws of 1971, 518:1)?"

Decision has been delayed to await arguments in *In re Robb,* No. 7414, decided this day. The question is asked in light of the following facts: John H. Sargent on April 21, 1965, was bound over from New London Municipal Court to Merrimack County Superior Court to await the action of the grand jury after having been charged with murder. On April 22, 1965, Mr. Sargent was committed to the New Hampshire Hospital for observation pursuant to RSA 135:17 (1964). On June 8, 1965, the hospital certified that Sargent was mentally ill and lacked the requisite mental competence for criminal responsibility. On October 19, 1966, the grand jury failed to return an indictment and Sargent was committed directly to the New Hampshire Hospital pursuant to RSA ch. 607

(reenacted as RSA 651:9 (Supp. 1975)). At that time, the superior court issued the following order:

> "The court being of the opinion that it will be dangerous should the Respondent go at large, orders that the Respondent be committed to the New Hampshire Hospital for life, there to remain until or unless earlier discharged, released or transferred by due course of law."

After Sargent's commitment, Forest W. Kimball was appointed his guardian and served in that capacity until July 3, 1973, when the guardianship was terminated by the Merrimack County Probate Court. While acting as guardian, Kimball received Sargent's monthly social security disability benefits and Veteran's Administration pension payments and made payments to the hospital for the board and care of his ward. RSA 8:40, :43 (Supp. 1975); Annot., 63 A.L.R.3d 780, § 7(a) (1975). Payments already made total $6,325 for the seven years Sargent was hospitalized. In September of 1972, upon advice of counsel, the guardian stopped making payments for the board and care of his ward. The balance of $180.85 remaining in the hands of the guardian is claimed both by the State and by Sargent. Pending a decision of this court, the funds were placed in escrow.

Since payment for board and care rendered has been made through July 3, 1973, the State apparently is seeking to apply the remaining $180.85 in the custody of the guardian from that time to Sargent's release. Furthermore, it is the State's position that this final charge is considerably below the actual value of the services rendered to the plaintiff. Moreover, it is the State's contention that "[i]n determining whether patients are liable for their board and care, the State applies a general rule that all persons committed to the hospital in the first instance are chargeable, assuming they have the ability to pay." RSA 8:43 I (Supp. 1975). Psychiatric evaluations pursuant to RSA 135:17 (1964) are an exception to the general rule. Prisoners transferred from prison or county jails are nonchargeable. RSA 651:10 (Supp. 1975).

Essentially, plaintiff contests the charge of $180.85 on three grounds which are: (1) RSA 8:43 (Supp. 1975) which permits the State to recoup expenses incurred while at the State hospital does not apply to this plaintiff because of the statutes and their legislative history; (2) if the statute does apply, then its application violates equal protection of the laws (U.S. CONST. amend. XIV) since it

discriminates against those criminally incarcerated at the hospital because it extracts the cost of incarceration while not doing so for those first committed to the State prison and then transferred to the hospital or in other select circumstances and finally (3) if the statute does apply and does not violate equal protection, then in order to exact costs of incarceration the *quid pro quo* necessary would be the providing of effective and adequate treatment, which was not so provided. We reject all these claims.

RSA 8:40 (Supp. 1975) and 8:43 (Supp. 1975) when read together require that the "business supervisor shall . . . review and investigate . . . expenses incurred by patients receiving care, treatment or maintenance . . . and make recommendations to the respective boards of trustees . . . of such institutions . . . as to the rates to be charged for the care, treatment and maintenance of such patients or inmates . . . ." RSA 8:40 (Supp. 1975). "[T]he state is entitled to recover the expense of care, treatment and maintenance of any patient or inmate at" the State hospital. RSA 8:43 (Supp. 1975).

As already mentioned, certain statutory exceptions to this general rule of requiring payment exist. While legislative intent may be difficult to discern *(See* R. Dickerson, The Interpretation and Application of Statutes 69-71 (1975)) the words "patients" and "inmates" have a common sense meaning, and are sufficiently inclusive and well understood to bring Sargent within the ambit of the statute's fair meaning. Moreover, the legislature has acquiesced in the long-standing and practical application of the statutes whereby the State held all those committed directly to the hospital to be liable for payments unless expressly excluded. This plaintiff did not come within any exception. Acquiescense in the interpretation of the statutes, coupled with the fair import of the words' meanings, indicate plaintiff was intended to be covered by RSA 8:40, :43 (Supp. 1975). *See New Hampshire Retail Grocers Ass'n v. State Tax Comm'n,* 113 N.H. 511, 515, 309 A.2d 890, 891-92 (1973); 2A Sutherland, Statutory Construction §§ 49:03, :05, :10 (4th ed. rev. C. Sands 1973, Supp. 1975).

Plaintiff next claims that the provisions of the recoupment statute deny him equal protection of the laws. Under the terms of RSA 651:8, a grand jury may omit to find an indictment or petit jury may acquit a person for the reason of insanity or mental derangement. Such a person, who is not indicted or who is acquitted by reason of insanity, may be committed to the prison or the State hospital if the court is of the opinion that it is dangerous for

such person to go at large. RSA 651:9 (Supp. 1975). Plaintiff claims that neither prisoners (persons convicted and under sentence) nor those not indicted nor who are acquitted by reason of insanity who go first to the prison and then are transferred to the hospital, are required by the statute to pay. Although we agree that prisoners are not required to pay, we do not agree that this is so as to the others and thus find no denial of equal protection.

Absent some fundamental right or suspect classification, the equal protection test to be applied is whether there is a rational basis for distinguishing between groups who are treated differently. *Belkner v. Preston,* 115 N.H. 15, 332 A.2d 168 (1975). Plaintiff was committed to the hospital to protect him as well as society, thus furnishing a basis for the application of the rational basis test. *See, e.g., Jefferson v. Hackney,* 406 U.S. 535 (1972); *McGowan v. Maryland,* 366 U.S. 420, 426 (1961).

There is a rational basis for distinguishing between persons in Sargent's position and prisoners who have been convicted, sent to the prison and then transferred to the hospital. They are still prisoners even while at the hospital and when hospitalization is no longer necessary or desirable as to them they are not discharged but must return to the prison under their sentence. The legislature could rationally conclude that such prisoners should be kept at the expense of the State when transferred to the hospital while those in Sargent's position should pay if able. The legislature is also entitled to find that it is more desirable and beneficial to be committed to the hospital than to the prison. There is thus a rational basis for not charging those confined to the prison who by reason of insanity have not been indicted, are found not guilty or plead not guilty. *See Kough v. Hoehler,* 413 Ill. 409, 109 N.E.2d 177 (1952); *Colorado v. Estate of Burnell,* 165 Colo. 205, 439 P.2d 38, *appeal dismissed,* 393 U.S. 13 (1968).

RSA 651:10 (1974) provided that:

"The governor and council or the superior court may discharge any such person from prison, or may transfer any prisoner who is insane to the state hospital, to be there kept at the expense of the state, whenever they are satisfied that such discharge or transfer will be conducive to the health and comfort of the person and the welfare of the public . . . ."

The State acknowledges in its brief in *Robb supra* that if persons who by reason of insanity are not indicted, or are acquitted, or permitted to plead not guilty for this reason and are first committed to the prison and then transferred to the hospital are exempt from payment it would be "unjust, illogical and perhaps unconstitutional." We agree that such a construction would raise serious constitutional questions. Statutes should be construed when possible to avoid unjust consequences. *Doe v. State,* 114 N.H. 714, 328 A.2d 784 (1974); *Chaloux v. Chaloux Oil Co.,* 103 N.H. 539, 176 A.2d 192 (1961).

The words "any such person" in RSA 651:10 (1974) referred to persons who have not been indicted or have been acquitted by reason of insanity and who have been found to be dangerous to go at large and have been committed to the prison. RSA 651:8, :9 (Supp. 1975). The term "prisoner" referred to one in the prison under a criminal sentence. The words "to be there kept at the expense of the state" referred to the prisoners who had been transferred to the hospital and not to those covered by sections 8 and 9. All persons who are not indicted or who have been acquitted or have pleaded not guilty by reason of insanity who are in the hospital, by whatever route they arrived there, are chargeable for their board and care and no equal protection violation exists.

Plaintiff's final argument that charges for services rendered at the hospital without the *quid pro quo* of treatment avails him nothing in this case. Reduction in treatment over the years and his final release into the community demonstrates the adequacy and success of the treatment provided. The reasonableness of the charge is not before us. If persons committed because it is dangerous that they go at large are entitled to "minimally adequate treatment" as contended by Sargent *(See O'Connor v. Donaldson,* 422 U.S. 563, 580-89 (1975) (Burger, C.J., concurring)), the record before us demonstrates that he received such treatment.

*Remanded.*