IN the MATTER OF the GUARDIANSHIP OF Elliot NELSON, Incompetent: BANK OF STURGEON BAY, Guardian, Appellant,

v.

DEPARTMENT OF HEALTH & SOCIAL SERVICES, Respondent.

Supreme Court

*No. 79–997. Argued September 3, 1980.—*
*Decided September 30, 1980.*
(Also reported in 296 N.W.2d 736.)

262

For the appellant there was a brief by *Eric A. Stearn* and *Jonjak, Kase, Stearn & Scallon* of Sturgeon Bay, and oral argument by *Eric A. Stearn.*

For the respondent there was a brief and oral argument by *Wendy A. Vercauteren,* assistant collection and deportation counsel.

BEILFUSS, C. J.   On May 24, 1979, an order was entered by the Door County Circuit Court requiring the Bank of Sturgeon Bay in its capacity as guardian of the estate of Elliot Nelson, an incompetent, to pay the Department of Health & Social Services (H&SS) all funds available from the guardianship assets in excess of $1,-500. This order was issued under the authority of sec. 46.10(2), Stats. From this adverse ruling, the Bank of Sturgeon Bay (guardian) appealed. This court subsequently granted the guardian-appellant's petition to bypass the court of appeals under sec. 808.05.

The trial court decided this matter on the basis of a stipulation of fact entered into by the parties. It appears from this stipulation that in 1971 Elliot Nelson was tried in Door County for the offense of second-degree murder in violation of sec. 940.02, Stats. Nelson was found not guilty by reason of mental disease or defect. The circuit court thereafter committed the defendant to Central State Hospital pursuant to sec. 971.17(1). On May 15, 1973, the guardian assumed responsibilities for the estate of Nelson. On February 12, 1974, Nelson was transferred to the Winnebago Mental Health Institute where he remained until at least January 31, 1978.

H&SS filed a petition for payment of claim with the Door County Court on March 21, 1978. In its petition it was alleged that between July 31, 1975[1] and January 31, 1978, the ward Nelson had been receiving treatment at the Winnebago Mental Health Institute and that the sum of $61,331.17 was due as payment for the cost of his care and maintenance during that period. At the time of the filing of the petition, the value of the Nelson estate was about $27,000. The petition filed by H&SS further stated that payment of all of the assets except $400 would entitle the incompetent Elliot Nelson to become eligible for Medical Assistance and Supplemental Security Income.

As noted above, the trial court granted the petition and entered the order requiring payment of all guardianship funds in excess of $1,500.

This case presents three issues for our determination:

1. Whether sec. 46.10(2) and (2m), Stats., which authorizes the collection of the cost of care and maintenance from persons admitted or committed to a state institution but which exempts persons in prisons from a similar liability violates the equal protection clause of the federal or state constitutions.

2. Whether persons transferred to mental health facilities under sec. 51.37(5), Stats., after conviction and during the term of their sentence are exempt from sec. 46.10(2) liability and, if so, whether this violates the equal protection rights of the guardian's ward.

3. Whether the 1975 amendment to sec. 46.10(2), Stats., which had an effective date of July 31, 1975, constitutes an *ex post facto* law when applied to Nelson who was found not guilty by reason of mental disease or defect in 1971.

---

[1] Effective July 31, 1975, sec. 46.10(2), Stats., was amended to allow a claim for treatment of costs of a person committed under sec. 971.17(1). Laws of 1975, ch. 39, sec. 347. No claim is made for treatment prior to July 31, 1975.

Sec. 46.10(2), Stats. 1977, provides in relevant part:[2]

"Except as provided in sub. (2m), any person, including but not limited to a person admitted or committed under [sec.] . . . 971.17(1) . . . receiving care, maintenance, services and supplies provided by any institution in this state . . . in which the state is chargeable with all or part of the person's care, maintenance, services and supplies . . . shall be liable for the cost of the care, maintenance, services and supplies. . . ."

Subsection (2m) of sec. 46.10, Stats., further provides:

"The liability specified in sub. (2) shall not apply . . . to care, maintenance, services and supplies provided to persons 18 and older by prisons named in s. 53.01."

This subsection effectively exempts persons in prisons from any claims by H&SS which might otherwise exist under sub. (2) of sec. 46.10.

Sec. 46.10, Stats., as amended, represents a legislative modification of a series of decisions by this court. The court had historically refused to extend sec. 46.10(2) liability "[for] any confinement or any treatment which is merely an adjunct of the criminal process and is not separately mandated by confinement under the standards of ch. 51, Stats. . . ." *Conservatorship of Grams,* 63 Wis.2d 194, 197, 216 N.W.2d 889 (1974). *See also Treglown v. H&SS Department,* 38 Wis.2d 317, 156 N.W.2d 363 (1968); *Guardianship of Radoll,* 222 Wis. 539, 269 N.W. 305 (1936); *Guardianship of Gardner,* 220 Wis.

---

[2] H&SS seeks to fix liability for a period from February, 1975 through January, 1978. The guardian's equal protection claim turns on the existence of sub. (2m) of sec. 46.10, Stats. However, sec. (2m) was not effective until June 30, 1977 or well into the period for which the guardian seeks to be free from liability. *See* Laws of 1977, ch. 29, sec. 555. In light of the decision reached in this case and for purposes of analysis, we will not differentiate between the different version of the statutes applicable between 1975 and 1977.

490, 264 N.W. 647 (1936) ; *Guardianship of Sprain,* 219 Wis. 591, 263 N.W. 648 (1935). This court has specifically held that a person committed to a mental health facility after a finding of not guilty by reason of mental disease or defect was not liable for the cost of his subsequent confinement and treatment. *Treglown v. H&SS Department, supra.* Sec. 46.10 now expressly provides that a person committed under the authority of sec. 971.17(1) shall be liable for the cost of his care. There is no dispute in this case that Nelson comes squarely within its terms.

The guardian initially contends that liability as fixed by sec. 46.10(2), Stats., violates the equal protection clause of the federal and state constitutions. We begin by noting that art. I, sec. 1 of the Wisconsin Constitution is substantially equivalent to the due process and equal protection clauses of the fourteenth amendment to the United States Constitution. *State ex rel. Cresci v. H&SS Department,* 62 Wis.2d 400, 414, 215 N.W.2d 361 (1974) ; *State ex rel. Sonneborn v. Sylvester,* 26 Wis.2d 43, 49, 132 N.W.2d 249 (1965). It is also worth noting that all legislative acts are presumed constitutional, a heavy burden is placed on the party challenging constitutionality and if any reasonable doubt exists it must be resolved in favor of the constitutionality of the statute. *Sambs v. City of Brookfield,* 97 Wis.2d 356, 370, 293 N.W.2d 504 (1980).

The threshhold question presented by the guardian's equal protection claim regards the proper standard to be applied in reviewing the constitutionality of sec. 46.10 (2), Stats. It is claimed that the right to hold personal assets is a fundamental right which cannot be denied to a segment of society absent a compelling state interest. In support of his position, the guardian cites *Lynch v. Household Finance Corp.,* 405 U.S. 538 (1972). It is

true that when a statutory classification infringes upon a fundamental right or involves a suspect class, a heightened judicial standard of scrutiny is appropriate.[3] However, our attention has not been directed to any case which holds that a statute which affects only an interest in real or personal property infringes upon a "fundamental right" as that term has been used in the context of analysis under the equal protection clause.

The guardian's reliance upon *Lynch v. Household Finance Corp., supra,* is not persuasive. *Lynch* involved the construction of two federal statutes, 42 U. S. C., sec. 1983 and 28 U. S. C., sec. 1343(3). The United States Supreme Court held that in an action under those statutes a plaintiff may seek to vindicate "property" rights as well as "personal" rights. 405 U.S. at 543–44. Although the court recognized the traditional value placed by American law on the right to own or dispose of property, the case did not involve a question of law under the equal protection clause.

Sec. 46.10(2), Stats., does not single out a class of persons and deny them, directly or indirectly, any right which is properly characterized as fundamental. In this case the guardian is being asked to pay for services rendered to the ward in the course of his treatment at a mental health facility. To hold that strict scrutiny applies in this case would require the court to invalidate all statutes which exacted a charge from the public for some service rendered unless justified by a compelling state interest. Strict scrutiny under the equal protection clause does not extend that far.

In the case of *Ortwein v. Schwab,* 410 U.S. 656 (1973), the United States Supreme Court was faced with an analogous equal protection challenge. The appellant in

[3] *See Marmolejo v. ILHR Department,* 92 Wis.2d 674, 285 N.W. 2d 650 (1979); *Wisconsin Bingo Supply & Equipment Co. v. Bingo Control Bd.,* 88 Wis.2d 293, 276 N.W.2d 716 (1979); *Warshafsky v. The Journal Co.,* 63 Wis.2d 130, 216 N.W.2d 197 (1974).

*Ortwein* challenged a $25 appellate court filing fee levied by the State of Oregon. He claimed he was indigent and unable to pay the fee. The Supreme Court rejected all claims that the $25 fee, which was used to offset the operating expense of the appellate system, implicated the fundamental rights of the appellant. The court concluded that the Oregon law was in the area of economics and social welfare and therefore the applicable standard of review was that of rational justification. *Id.* at 660. The reasoning of *Ortwein* is applicable to the present case. Where, as here, a statute which exacts a charge for some service rendered is challenged on equal protection grounds, the proper standard of review is the "rational basis" test as set forth below.

The guardian alternatively claims that the classification created by sec. 46.10(2) and (2m), Stats., is arbitrary and irrational and that it must be invalidated even though it does not implicate a fundamental interest. Two arguments are presented in this regard.

The guardian initially argues that both prisoners and other persons described in sub. (2) are similarly situated. They are confined in institutions for the public benefit as a result of the criminal process and while so confined they receive care, supplies and services from the state. In view of the similarity of their situation in society, the guardian submits that no set of facts can be conceived of such that a rational basis can be said to justify the exemption from liability for prisoners created by sub. (2m).

As a general rule, in the absence of a suspect classification or a fundamental interest, the question in an equal protection case is whether the legislative classification is arbitrary and without a rational relationship to a legitimate legislative objective. *Marmolejo v. ILHR Department, supra* at 683. The validity of classification must be sustained unless it is wholly irrelevant to the

achievement of that objective. *Sambs v. City of Brook-field, supra* at 370, citing *McGowan v. Maryland*, 366 U.S. 420, 425 (1961). *See also Harris v. McRae*, —— U.S. ——, 100 S. Ct. 2671, 65 L. Ed.2d 784 (1980). In assessing a statute under this standard of review, the court is bound to defer to the will of the legislature if any set of facts can be conceived of which would provide a rational basis for the statutory classification.[4]

"[I]t is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination. The rationale which the court locates or constructs is not likely to be indisputable. But it is not our task to determine the wisdom of the rationale or the legislation. The legislature assays the data available and decides the course to follow." *Sambs v. City of Brook-field, supra* at 371.

As set against this standard, sec. 46.10(2) and (2m), Stats., must be sustained as a rational exercise of legislative authority in furtherance of a legitimate governmental objective. The statute at issue creates a general classification, *i.e.*, persons committed or admitted to state institutions who receive care, maintenance, services or supplies provided by the state. These persons are generally liable for their treatment expenses. The second class created by sec. 46.10 consists of persons in prisons. This class is exempt from liability for care, maintenance, services and supplies received while in prison. The disparate treatment of prisoners as opposed to all other institutionalized persons is not irrational, arbitrary or capricious.

Sec. 46.10(2) and (2m), Stats., is justifiable as a legislative distribution of the economic burdens of institution-

---

[4] *Harris v. Kelley*, 70 Wis.2d 242, 255, 234 N.W.2d 628 (1975); *Omernik v. State*, 64 Wis.2d 6, 19, 218 N.W.2d 734 (1974). *See also Sambs v. City of Brookfield, supra; Marmolejo v. ILHR Department, supra* at 683-84.

al care. The distribution is rational inasmuch as it is based on a recognition of the fact that prisoners receive supplies, services and care which differ from that supplied to other institutionalized persons. This difference is both theoretical and factual. Theoretically the prisoner is incarcerated as a measure to prevent harm to the public. Restrained of his liberty, he is not free to commit criminal acts. This is an historic and a primary reason for the existence of prisons. Factually, the services rendered to the prisoner are not geared to return him to a state of mental or physical health. They are geared to sustain him on a day-to-day basis while he serves out his term. This is not to deny that rehabilitation and resocialization programs exist and play an important role in a prison. These programs, however, are as valuable to the public as they are to the individual prisoner since society has a high interest in protecting itself from renewed criminal conduct after release of the prisoner.

In contrast, the person receiving care and services in a non-penal institution may reasonably be classified as being in a different situation. The group of persons described by sub. (2) is broad indeed. These persons range from hospital patients to sex offenders involuntarily committed under ch. 975. Despite their heterogeneity, they share a common trait. All are receiving care or services which inure primarily to their benefit as opposed to the benefit of the public. It cannot be denied that among this group of persons there are those whose confinement will be of some value to society. This benefit, however, may reasonably be viewed as secondary to an overriding purpose of treatment designed to benefit the individual.

It is not irrational or arbitrary to shift the economic burden from the taxpayers to those persons who receive services at the expense of the state. It is also a rationale exercise of legislative authority to require the public to pay for services which primarily benefit society, *i.e.,*

those services supplied by prisons. Admittedly, the classification is not perfect. The legislature, however, is not required to fashion statutory classifications so that equality under the law is mathematically exact. It is only required to have a rational basis for the classifications it chooses to make. We hold that such a basis exists in this case. The statute treats disparately two classes of persons who may properly be said to be receiving substantially different types of services and care. The difference in the types of service, *i.e.*, one being rendered for the protection of the public and one being rendered for the benefit of the individual, provides a reasoned ground for the exemption given the prisoners under sub. (2m). The legislative differentiation between the two groups is germane to the purposes and policies which underpin the statute. Sec. 46.10(2) and (2m), Stats., does not violate the principle of equal protection under the law.[5] *Harris v. Kelley, supra* at 252.

The guardian's second challenge to the rational basis of sec. 46.10(2) and (2m), Stats., is based upon the alleged disparate treatment between institutionalized persons described in sub. (2) and prisoners who are transferred to a mental health facility under sec. 51.37(5) during the term of their sentence. It is urged that it is

[5] We are supported in our conclusion by other jurisdictions which have treated the same or similar issue. Virtually every reported decision has held that an exemption from liability for prisoners under a statutory scheme which fixes liability on other institutionalized persons is not an unconstitutional denial of the equal protection of law. *See Fayle v. Stapley*, 607 F.2d 858 (9th Cir. 1979); *Colorado v. Estate of Purnell*, 165 Colo. 205, 439 P.2d 38 (1968); *In re Estate of Schneider*, 50 Ill.2d 152, 277 N.E.2d 870 (1971); *Department of Mental Health v. Pauling*, 47 Ill.2d 269, 265 N.E.2d 159 (1970); *State ex rel. Dorothea Dix v. Davis*, 292 N.C. 147, 232 S.E.2d 698 (1977); *In re Sargent*, 116 N.H. 77, 354 A.2d 404 (1976); *In re Robb*, 116 N.H. 134, 354 A.2d 408 (1976). *But see McAuliffe v. Carlson*, 377 F. Supp. 896 (D. Conn. 1974).

irrational and arbitrary to charge the former group and to exempt the latter. The guardian misperceives the scope of sec. 46.10(2). There is no unequal treatment between these two groups. Both groups are liable. Liability under sub. (2) extends to *any* person admitted or committed to a state institution except as provided in sub. (2m). Indeed, the 1977 amendment to sec. 46.10(2) included an express reference to persons transferred to a state institution under sec. 51.37(5). *See* Laws of 1977, ch. 29, sec. 555.

The guardian's final claim is that sec. 46.10(2), Stats., as applied to him, constitutes an *ex post facto* law. The thrust of his argument is that in 1971 when he was found to be not guilty by reason of mental disease or defect the law did not permit collection of costs against persons committed under sec. 971.17(1). It is urged that the prospective application of the 1975 amendment to the estate of the ward amounts to enhancing the penalty for a criminal act and that such application is unconstitutional.

*Ex post facto* laws are proscribed both by the United States and Wisconsin Constitutions. *See* United States Constitution, art. I, sec. 10, Wisconsin Constitution, art. I, sec. 12. In *Dobbert v. Florida,* 432 U.S. 282, the United States Supreme Court restated the definition of an *ex post facto* law:

" 'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.' " *Id.,* at 292, quoting *Beazell v. Ohio,* 269 U.S. 167 (1925).

*See also Wisconsin Bingo Supply & Equipment Co. v. Bingo Control Bd., supra* at 304–05; *State ex rel. Mueller v. Powers,* 64 Wis.2d 643, 645–46, 221 N.W.2d 692 (1974). It is beyond dispute that the *ex post facto* doctrine applies only to criminal cases.[6]

We think it plain that fixing liability upon the estate under sec. 46.10(2), Stats., is not *ex post facto.* The guardian's ward has not been convicted of any crime. His finding of not guilty by reason of mental disease or defect is not the equivalent of a conviction. *Hoppenrath v. State,* 97 Wis.2d 449, 459, 293 N.W.2d 910 (1980). His subsequent commitment is civil in nature. *Id.* The liability for the cost of treatment is a civil liability. However, even if it is assumed that the ward was receiving treatment incident to a criminal conviction, it does not follow that assessment of treatment costs would be unconstitutional. Liability under sec. 46.10(2) is not a penalty or punishment. The statute is merely a mechanism by which H&SS can recoup the value of the treatment or services rendered to a person.

We conclude that the guardian was properly ordered to pay from the estate of the ward the cost of the care, maintenance, services and supplies provided by the state. Sec. 46.10(2) and (2m), Stats., rests on a rational legislative decision to hold the institutionalized person liable for treatment and services which are primarily for his or her benefit. It does not deny equal protection of the law by requiring the public to pay for the maintenance of prisoners, persons incarcerated for society's protection. Finally, the *ex post facto* doctrine does not apply in this case because the liability of the ward's estate is

[6] *J & N Corp. v. Green Bay,* 28 Wis.2d 583, 587, 137 N.W.2d 434 (1965); *State ex rel. Sowle v. Brittich,* 7 Wis.2d 353, 360, 96 N.W.2d 337 (1959); *State ex rel. Globe Steel Tubes Co. v. Lyons,* 183 Wis. 107, 123, 197 N.W. 578 (1924); *In Matter of Complaint Against Seraphim,* 97 Wis.2d 485, 294 N.W.2d 485 (1980).

unrelated to criminal proceedings and because a charge for services rendered does not constitute punishment and is not a penalty.

*By the Court.*—Order affirmed.