Thomas G. WOODMAN, Petitioner-Appellant-Petitioner,

v.

DEPARTMENT OF HEALTH & SOCIAL SERVICES, and the Chippewa County Department of Social Services, Respondents.

Supreme Court

*No. 79–1497. Argued March 30, 1981.—Decided April 29, 1981.*

(Also reported in 304 N.W.2d 723.)

316

For the petitioner there were briefs by *Gerhardt F. Getzin* and *James Jannetta* of Wisconsin Judicare, Inc., of Wausau, and oral argument by *Mr. Getzin.*

For the respondents the cause was argued by *Robert W. Larsen,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

BEILFUSS, C.J.   This is a review of a decision of the court of appeals which affirmed the judgment of the Circuit Court for Chippewa County: ROBERT F. PFIFFNER, Circuit Judge.

This matter involves a question of whether the petitioner Thomas Woodman is entitled to receive public assistance benefits under the program authorized by Title IV-A of the Social Security Act, 42 U.S.C., sec. 601 *et seq.* and sec. 49.19 *et seq.,* Stats., commonly referred to as Aid to Families with Dependent Children (AFDC).

On December 1, 1978, the Chippewa County Department of Social Services discontinued AFDC payments to the petitioner Thomas Woodman (Woodman). This aid was terminated due to the conclusion that the recipient owned two registered motor vehicles, the second of which was not used for purposes of employment or to obtain medical care. Although he was otherwise eligible for AFDC, the county social services agency determined that the ownership of this second vehicle contravened the terms of the "two-vehicle rule," sec. 49.19(4)(em), Stats.,[1] and disqualified him as an aid

---

[1] Sec. 49.19(4)(em), Stats., provides: "The ownership of one vehicle registered under ch. 341 or 350 by an AFDC group may

recipient. Woodman then requested a hearing to contest the validity of the termination of benefits.

An administrative proceeding was conducted on January 8, 1979, before a hearing examiner of the Department of Health & Social Services (H&SS). It was established at the hearing that Woodman owned two registered vehicles, a 1967 Ford pickup truck and a 1973 Ford station wagon. The truck was estimated to be worth about $750. The aid recipient had an equity value[2] of about $225 in the station wagon worth about $1,500. Woodman explained that he used the station wagon for family purposes and that the pickup truck was used in connection with a small woodworking business which he had begun in April of 1978. However, in the course of this business venture, the aid recipient had sold only three pieces of his work and had incurred a net loss of about $50. Furthermore, he admitted that the truck was a convenience for hauling materials and that his station wagon would have served that purpose.

On the basis of this record, the hearing examiner found that Woodman owned two registered vehicles. It was further found that he had no special need for a second car for purposes of employment or to obtain medical care. The examiner concluded that this ownership rendered the aid recipient ineligible for an AFDC grant and that the county properly discontinued his aid.

A review of this administrative determination was sought in circuit court pursuant to the terms of sec.

not prevent the granting of aid. Ownership of a 2nd vehicle shall be permitted only if the department determines it is necessary for purposes of employment or to obtain medical care. For purposes of this paragraph and of par. (es), an 'AFDC group' consists of those persons listed on the application form for whom aid is being requested."

[2] The Code of Federal Regulations defines "equity value" as "fair market value minus encumbrances (legal debts) . . ." 45 C.F.R., sec. 233.20 (a) (3) (ii).

227.15 *et seq.,* Stats. The circuit court concluded that no grounds existed for disturbing the order of H&SS, and judgment was entered accordingly on September 10, 1979.

Woodman appealed from this adverse determination. Before the court of appeals he argued that the two-vehicle rule violates the Supremacy Clause of the United States Constitution in that it disqualifies persons who would otherwise be eligible to receive AFDC payments under federal standards of eligibility. The United States Supreme Court decisions in *King v. Smith,* 392 U.S. 309 (1968) and *Townsend v. Swank,* 404 U.S. 282 (1971), were cited in support of this proposition. This argument was rejected. In its opinion reported as *Woodman v. H&SS Department,* 96 Wis.2d 466, 292 N.W.2d 352 (Ct. App. 1980), the court of appeals concluded that the federal government did not intend to preclude state regulations in the area of AFDC eligibility and that sec. 49.19(4)(em), Stats., was a valid and reasonable exercise of state power not in conflict with federal law.[3] *Id.* at 469–70. We subsequently granted Woodman's petition to review this decision.

The question presented in this case is whether the restriction on ownership of motor vehicles authorized by sec. 49.19(4)(em), Stats., is a legitimate precondition to the receipt of AFDC under Title IV-A of the Social Security Act.

Although we have accorded the statute in question the presumptive validity due to it, *see In Matter of the Guardianship of Nelson,* 98 Wis.2d 261, 266, 296 N.W.2d 736 (1980), we conclude that the eligibility restriction contained within sec. 49.19(4)(em), Stats., is not autho-

---

[3] The court of appeals also considered and sustained the validity of sec. 49.19(4)(em), Stats., under the equal protection clause of the federal constitution. *Woodman v. H&SS Department, supra,* 96 Wis.2d at 470. This issue was not argued before this court.

rized by the Social Security Act and is an unlawful condition precedent to the receipt of AFDC.

The AFDC program was enacted as part of the Social Security Act of 1935. *See* 42 U.S.C., sec. 601 *et seq.* It is based on a scheme of "cooperative federalism." *King v. Smith, supra,* 392 U.S. at 316. Under the federal law a state is free to decide whether to participate in the program. If it decides to participate, a state is entitled to receive partial federal funding for its welfare plan. However, as a condition precedent to the receipt of funds, the state must submit its plan to the Secretary of the Department of Health, Education and Welfare for approval. *See generally,* 42 U.S.C., secs. 602(b) and 603. This program must contain certain provisions as outlined in sec. 402(a) of the Social Security Act. 42 U.S.C., sec. 602(a).

Sec. 402(a)(10) of the Social Security Act is one such provision which is mandatory upon a participating state. It provides that the state must implement a plan which requires AFDC to "be furnished with reasonable promptness to *all eligible individuals.*" (Emphasis supplied.) 42 U.S.C., sec. 602(a)(10). In a series of cases beginning with *King v. Smith,* 392 U.S. 309 (1968), this provision has taken on major significance in the definition of the role of the state and federal governments in establishing eligibility requirements for receipt of AFDC grants.

In the *King Case,* the United States Supreme Court considered the validity of an Alabama statute which disqualified an applicant mother for the receipt of AFDC if she lived or cohabited with a man to whom she was not married. 392 U.S. at 313–14. The court noted that a state was obligated to provide aid to *all eligible individuals* under sec. 402(a)(10) of the Act. These eligible persons were defined by sec. 406(a) as dependent children deprived of "parental" support or care by reason

of the death, continued absence or incapacity of a "parent." In holding that the Alabama statute was invalid, the court first noted that the purpose of then-recent congressional amendments to the Act was to fashion an AFDC program designed to provide aid to children without respect to the moral fitness of the parent. *Id.* at 325. The court also rejected the notion that the term "parent" could include a "cohabitor" who had no duty to support the dependent children of an applicant mother. After reviewing a number of provisions of the AFDC law, the court wrote, "we think that these provisions corroborate the intent of Congress that the only kind of 'parent' under sec. 406(a), whose presence in the home would provide adequate economic protection for a dependent child is one who is legally obligated to support him." *Id.* at 332. The Alabama regulation was found to be invalid because it defined "parent" in a manner inconsistent with the Social Security Act. *Id.* at 333.

The *King Case,* 392 U.S. 309, has served as precedent in many Supreme Court decisions.[4] The principle embodied in *King* was most recently articulated in *Miller v. Youakim,* 440 U.S. 125 (1979). In that case it was held that Illinois could not deny foster family AFDC payments (as opposed to lower, basic AFDC payments) to a caretaker sister acting in the capacity of a foster parent. Although the caretaker sister was qualified to receive foster care AFDC under sec. 408(a) of the Social Security Act, Illinois maintained that under its law a "foster family home" was defined as a facility for chil-

---

[4] *See Miller v. Youakim,* 440 U.S. 125, 133–34 (1979); *Philbrook v. Glodgett,* 421 U.S. 707, 719 (1975); *Van Lare v. Hurley,* 421 U.S. 338, 345 (1975); *Burns v. Alcala,* 420 U.S. 575, 578 (1975); *New York v. Dublino,* 413 U.S. 405, 421–22 (1973); *Carleson v. Remillard,* 406 U.S. 598, 600 (1972); *Townsend v. Swank,* 404 U.S. 282, 286 (1971); *Lewis v. Martin,* 397 U.S. 552 (1970).

dren who are unrelated to the operator of the facility. Therefore it was claimed by the state that the sister was only entitled to the lower, basic AFDC payments. The court rejected the state's argument and in reliance upon *King* and its progeny, wrote that a

". . . State may not deny assistance to persons who meet eligibility standards defined in the Social Security Act unless Congress clearly has indicated that the standards are permissive." *Id.* at 133–34.

After a review of the legislative history and the structure of the Social Security Act, the United States Supreme Court concluded that Congress designed the foster AFDC program to include foster children placed with relatives.

The *King* rule mandating strict adherence to federal eligibility requirements stands in contrast to the level of discretion which is afforded to the state in its determination of the standard of need. A state is free to determine that subsistence level required to support a hypothetical family residing within its borders. Both need for assistance in the first instance and the amount of benefits to be granted to an individual applicant are based on a comparison of this standard of need with the income and resources available to the applicant. 42 U.S.C., sec. 602(a)(7). *See also Shea v. Vialpando,* 416 U.S. 251, 253 (1974). In the determination of this subsistence level, considerable latitude is granted to the state. *King v. Smith, supra,* 392 U.S. at 318.

At issue in this case is the validity of sec. 49.19(4) (em), Stats., the two-vehicle rule, which provides that AFDC shall be provided on the condition that a potential recipient own only one vehicle registered under ch. 341 or 350 unless it can be demonstrated that a second car is "necessary for purposes of employment or to obtain medical care."[5] As he did before the court of appeals,

---

[5] *See* fn. 1.

the petitioner Woodman argues that the two-vehicle rule is invalid under the Supremacy Clause of the United States Constitution. In response, H&SS argues that the regulation is authorized by and consistent with federal law as a general eligibility requirement. There is no claim that the two-vehicle rule is a method of determining a standard of need.

Although we conclude that the two-vehicle rule cannot function to disqualify Woodman from receipt of AFDC, it is not clear that such a holding is properly based upon an analysis under the Supremacy Clause and all of its attendant doctrines. The scheme of cooperative federalism envisioned by Title IV-A of the Social Security Act does not readily lend itself to scrutiny in terms of federal supremacy. This was pointed out by Chief Justice BURGER in his concurring opinion in *Townsend v. Swank, supra,* 404 U.S. at 292. AFDC and other federally funded programs require the voluntary participation of the state. The state is the administrator and implementer of the welfare program. It remains free to deviate from federal requirements provided the program which is created is funded with state moneys. In short, questions of exclusive federal jurisdiction or federal preemption of areas of concurrent jurisdiction appear out of place in a discussion of the state's authority to enact various welfare laws during the course of participation and cooperation in a federally funded AFDC program. Indeed, although some opinions have placed reliance on the Supremacy Clause, *see, e.g., Townsend v. Swank, supra* at 286, there is a consistent lack of reference to this constitutional provision in recent decisions. Whether or not ultimately grounded in the Supremacy Clause, the rule upon which we base our conclusion was articulated in *King v. Smith,* 392 U.S. 309 (1968) :

". . . [T]he Federal Government, unless barred by some controlling constitutional prohibition, may impose the terms and conditions upon which its money allotments to the States shall be disbursed, and that any state law or regulation inconsistent with such federal terms and conditions is to that extent invalid." *Id.* at 333, fn. 34. *See also Townsend v. Swank, supra,* 404 U.S. at 292 (Burger, C.J., concurring in result).

In the absence of congressional permission to vary or supplement the terms and conditions upon which the federal funding was made, a state must adhere to these federal requirements. *Miller v. Youakim, supra,* 440 U.S. at 133–34.

In essence, H&SS advances two arguments to sustain the two-vehicle rule. The first claim is that sec. 49.19 (4) (em), Stats., should be sustained because it is authorized by federal regulation and because the Department of Health, Education & Welfare (HEW) has approved the plan in effect in this state.

Approval of an AFDC plan by HEW has never insulated the terms of that plan from judicial review. Indeed, HEW has approved state plans which conflict with its own interpretation of federal law. *See e.g., Carleson v. Remillard, supra,* 406 U.S. at 602. We do not view the mere approval of sec. 49.19 (4) (em), Stats., as convincing evidence of its validity.

The respondent H&SS cites 45 C.F.R., sec. 233.20 (a) (3) (i) as a federal regulation which authorizes the two-vehicle rule. That regulation provides a state plan for AFDC must specify:

". . . the amount and types of real and personal property, including liquid assets, that may be reserved, *i.e.,* retained to meet the current and future needs while assistance is received on a continuing basis. In addition to the home, personal effects, automobile and income producing property allowed by the agency, the amount

of real and personal property, including liquid assets, that can be reserved for each individual recipient shall not be in excess of two thousand dollars. Policies may allow reasonable proportions of income from businesses or farms to be used to increase capital assets, so that income may be increased."

It is claimed that this provision authorizes the state to restrict the type and number of vehicles which the AFDC recipient owns.

We do not so read the regulation. Sec. 233.20 (a) (3) (i) allows a state to limit the worth of an aid recipient's asset base to a value not in excess of $2,000. In addition to the assets which may be reserved by an aid recipient while assistance is received, the state agency may allow the recipient to retain an automobile. The value of this automobile, if allowed, is not taken into account when calculating an individual's asset base for the purpose of eligibility. The regulation does not authorize the state to restrict the ownership of assets except as to the aggregate value of such assets.

The second argument advanced by H&SS is that the two-vehicle rule is consistent with the purposes of the Social Security Act in that it discourages aid recipients from spending their funds on nonessential commodities and encourages the use of aid for the benefit of dependent children. The apparent thrust of this argument is that despite the fact that the two-vehicle rule is not expressly authorized by federal law, it is consistent with the goals of the AFDC program and should be allowed to supplement the AFDC provisions.

As we stated above, when a person is eligible for AFDC under federal standards, a state may not deny aid unless Congress has clearly indicated that the supplementary restrictions are permissive. It is not enough

that the additional state requirements may be "consistent with" the broad purposes of Title IV-A.

The court fails to find any indication in the letter or the spirit of the Social Security Act which would lead it to conclude that the two-vehicle rule is a permissible AFDC requirement. To the contrary, to the extent that H&SS is correct in its assertion that the two-vehicle rule is intended to maximize funds available for the basic needs of a recipient's dependent children, several provisions of federal law suggest that this rule runs contrary to the intended operation of the AFDC program.

Sec. 405 of the Social Security Act addresses the problem of funds which have been mismanaged by an aid recipient. It provides:

"Whenever the State agency has reason to believe that any payments of aid to families with dependent children made with respect to a child are not being or may not be used in the best interests of the child, the State agency may provide for such counseling and guidance services with respect to the use of such payments and the management of other funds by the relative receiving such payments as it deems advisable in order to assure use of such payments in the best interests of such child, and may provide for advising such relative that continued failure to so use such payments will result in substitution therefor of protective payments as provided under section 606(b)(2) of this title, or in seeking appointment of a guardian or legal representative as provided in section 1311 of this title." 42 U.S.C., sec. 605.

When a parent or other eligible recipient is not "maximizing" funds for the benefit of his or her dependent children, the state may provide counseling and guidance or, in the event of continued mismanagement, protective payments under sec. 406(b)(2) can be arranged. If such protective payments are made, the state agency must undertake continuing special efforts to develop greater ability on the part of the caretaker-relative to manage

funds for the family's benefit. 42 U.S.C., sec. 606 (b) (2) (B).

We also note that the federal regulations prohibit a state from dictating how a recipient's money will be spent. 45 CFR 234.11 provides:

"Federal financial participation is available in money payments made under a State plan under title I, IV-A, X, XIV, or XVI of the Social Security Act to eligible families and individuals. Money payments are payments in cash, checks, or warrants immediately redeemable at par, made to the grantee or his legal representative with no restrictions imposed by the agency on the use of funds by the individual."

This provision establishes that a state may not restrict the purchase of specific goods, *e.g.*, a second vehicle, which a recipient might make with AFDC payments.

In sum, we cannot conclude that Congress had intended to allow a state to deny AFDC to all persons who purchase a second car.[6] This is not to say that the state may not develop a plan which establishes eligibility restrictions which are narrower in scope than federal standards. *See e.g.*, *New York v. Dublino*, 413 U.S. 405 (1973). *See also Quern v. Mandley*, 436 U.S. 725 (1978). In determining the division of state-federal authority in AFDC eligibility cases, an examination of the terms of the intent of Title IV-A is necessary. *See* Block, *Coopera-*

---

[6] There may be certain circumstances when the aid recipient's purchase of a second vehicle will demonstrate such an improper use of funds that this purchase will provide grounds for H&SS to counsel the recipient on the use of AFDC payments. *See* 42 U.S.C., sec. 605. In the event the person fails to follow this advice, a plan for protective payments may be devised. *See* Wisconsin Department of Health & Social Services, Division of Economic Assistance, *Income Maintenance Manual*, Sec. III–D–3 *et seq.* This procedure serves to insure that the AFDC recipient is using the aid payments for the benefit of the dependent children.

*tive Federalism and the Role of Litigation in the Development of Federal AFDC Policy,* Wisconsin Law Review 1, 19 (1979). In this case that examination does not reflect favorably on the two-vehicle rule.

We note that the effect of this decision is not to exempt all automobiles owned by a recipient when determining that person's eligibility for AFDC. Under 45 C.F.R., sec. 233.20(a)(3)(i), in addition to an automobile and other items named in that regulation, a state may not allow an aid recipient to reserve an asset base of real and personal property, including liquid assets, with a value in excess of two thousand dollars. Second cars and other vehicles may be accounted for as a part of the valuation of this asset base.

In Wisconsin, an aid recipient may not reserve liquid assets[7] in excess of $1,500. Wis. Adm. Code, Sec. PW-PA 20.22. In this case there is no dispute that Woodman's asset base, including his second vehicle, is valued at less than $1,500 and would not render him ineligible for aid.

Sec. 49.19(4)(em), Stats., the two-vehicle rule, denies eligibility to those who would otherwise be eligible for AFDC under federal standards. Nothing about Title IV-A of the Social Security Act lends support for the conclusion that such a restriction would be permitted. Sec. 49.19(4)(em) may not bar the receipt of AFDC recipients who qualify for aid in all other respects.

*By the Court.*—The decision of the court of appeals is reversed. The cause is remanded to the trial court with directions to enter judgment for the petitioner.

---

[7] The parties agree that the "liquid assets" referred to in Wis. Adm. Code PW-PA 20.22 are equivalent to the personal and real property a person may own without being disqualified as an aid recipient.