Merrimack
No. 86-327

PSYCHIATRIC INSTITUTE OF AMERICA

v.

MEDIPLEX, INC. & a.

December 4, 1987

*Sulloway, Hollis & Soden,* of Concord (*Eleanor H. Holmes* on the brief and orally), for Psychiatric Institute of America.

*Orr & Reno P.A.,* of Concord (*Eve H. Oyer* on the brief and orally), for Lake Shore Hospital.

*McSwiney, Jones, Semple & Douglas,* of Concord (*Charles G. Douglas III* and *Katherine E. Stine* on the brief, and *Mr. Douglas* orally), for Mediplex, Inc.

*Upton, Sanders & Smith,* of Concord (*Russell F. Hilliard* and *Gilbert Upton* on the brief, and *Mr. Hilliard* orally), for James F. and Maureen G. O'Neill.

*Stephen E. Merrill,* attorney general (*Douglas N. Jones,* assistant attorney general, on the brief and orally), for the State, on behalf of Governor John H. Sununu and the Health Services Planning and Review Board.

BROCK, C.J. This is an interlocutory transfer without ruling from the Superior Court (*Cann,* J.), whereby the parties seek clarification as to the effect, if any, of Executive Order 85-2 and

of Laws 1985, chapter 378, on the certificate of need (CON) procedures set forth in RSA chapter 151-C (Supp. 1983).

The facts are not in dispute. In late 1984, Mediplex, Inc. (Mediplex), Whispering Pines, and Psychiatric Institute of America (P.I.A.), all parties in the present action, applied for CON's for alcohol and substance abuse specialty beds under the provisions of RSA chapter 151-C (Supp. 1983). On May 23, 1985, the board, in two separate actions, reached a final decision, pursuant to RSA 151-C:8 (Supp. 1983), to deny all three CON applications.

On June 1, 1985, Executive Order 85-2 took effect. This Executive Order imposed a moratorium on the issuance of CON's for additional general acute and specialty care beds in New Hampshire. The limitation in the moratorium stated that it did not apply to any letter of intent or application which was submitted as of February 28, 1985, "provided that the letter of intent and its application receive[d] a CON by June 1, 1985."

Under the procedures provided in RSA chapter 151-C (Supp. 1983), Whispering Pines, on June 12, 1985, requested reconsideration of the denial of its application. The board held a hearing for that purpose on June 26, 1985, reversed its earlier decision, and granted a CON to Whispering Pines. P.I.A., Mediplex, and Lake Shore Hospital (Lake Shore) (a party who currently operates a specialty bed hospital and is opposed to the granting of additional CON's), pursuant to the provisions of RSA chapter 151-C (Supp. 1983), then requested reconsideration of the board's decision.

On October 21, 1985, the board granted the three requests for reconsideration, ruled that all three original applications would be considered as competing, and issued a pre-hearing order stating that a rehearing would be held on December 13, 1985.

On December 3, 1985, P.I.A. filed a petition for declaratory judgment in the superior court seeking a ruling that Executive Order 85-2 prohibited the board from issuing the CON to Whispering Pines on July 26, 1985. On December 6, 1985, the board stayed any further consideration of the matter pending a decision on the validity of the Executive Order. On June 10, 1986, the superior court approved the recommendation of the Master (*Frank B. Clancy*, Esq.) to approve the interlocutory transfer.

The four questions transferred pursuant to RSA 491:17 and Supreme Court Rule 9 are as follows: (1) whether Executive Order 85-2 is constitutional as applied to an applicant whose CON application was submitted prior to June 1, 1985, the date of the moratorium imposed by the Executive Order; (2) if the answer to question 1 is in the affirmative, whether the Certificate of Need

Review Board (as of July 1, 1985, the Health Services Planning and Review Board) (the board) possessed the authority to grant a CON to the defendants James F. O'Neill and Maureen G. O'Neill (Whispering Pines), on July 26, 1985; (3) whether the enactment of Laws 1985, chapter 378, prohibited the board from granting the CON to Whispering Pines on July 26, 1985; and (4) if the answer to question 3 is in the negative, which statute, RSA chapter 151-C (Supp. 1983) or RSA chapter 151-C (Supp. 1986), governs further proceedings before the board involving the subject matter of this case.

While the parties present two separate substantive issues, one being the effect of the Executive Order on RSA chapter 151-C (Supp. 1983) and the other being the effect of the subsequent revision to RSA chapter 151-C, all of their arguments go to one central issue; namely, whether the actions taken by the board under RSA chapter 151-C (Supp. 1983), relative to Whispering Pines' CON application, were proper at the time and under the procedures relied upon. For the reasons that follow, we conclude that the board adhered to procedures appropriate to its authority in reaching the decisions that it did under RSA chapter 151-C (Supp. 1983) and that future proceedings relative to this action should be determined pursuant to RSA chapter 151-C (Supp. 1983).

■ The parties' first claim, regarding the constitutionality of the Executive Order, is relevant only if it is determinative of the board's authority to issue a CON in this case. Because we find that a decision on a motion for reconsideration, under RSA chapter 151-C (Supp. 1983), is merely·a modification of the board's initial "final decision," in this case on May 23, 1985, which was before the effective date of the moratorium, we conclude that the Executive Order in question is not applicable to this case. Since the constitutionality of the Executive Order is not determinative of the outcome, we need not address that issue and turn instead to our interpretation of the statute.

■ This court is "the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." *City of Concord v. PELRB*, 119 N.H. 725, 727, 407 A.2d 363, 364 (1979). Such legislative intent is to be found not in what the legislature might have intended, but rather, in the meaning of what it did say. *Corson v. Brown Prods., Inc.*, 119 N.H. 20, 23, 397 A.2d 640, 642 (1979), *appeal after remand*, 120 N.H. 665, 421 A.2d 1005 (1980). We look to the words used in the statute itself as the

touchstone of the legislature's intent. *Greenhalge v. Town of Dunbarton*, 122 N.H. 1038, 1040, 453 A.2d 1295, 1296 (1982).

Generally, this court ascribes to statutory words and phrases their usual and common meaning unless the statute itself suggests otherwise. RSA 21:2; *Silva v. Botsch*, 120 N.H. 600, 420 A.2d 301 (1980); *see also King v. Sununu*, 126 N.H. 302, 490 A.2d 796 (1985) (court ascribes plain and ordinary meaning to words of statute); *In re Richard M.*, 127 N.H. 12, 497 A.2d 1200 (1985). Moreover, this court will not interpret a statute so as to produce unjust and seemingly illogical results, *General Electric Co. v. Dole Company*, 105 N.H. 477, 479–80, 202 A.2d 486, 488 (1964), or unjust consequences, *In re Sargent*, 116 N.H. 77, 354 A.2d 404 (1976). In determining legislative intent, we begin with an examination of the statutory language. *In re Robyn W.*, 124 N.H. 377, 469 A.2d 1351 (1983).

We believe that RSA 151-C:8 (Supp. 1983) contemplates that the board's original final decision, in this case the May 23, 1985 decision, is the final decision of the board, subject to modification on reconsideration or appeal. Both the prescribed temporal requirements leading up to the final decision, RSA 151-C:7 (Supp. 1983), and the terms of the statute relating to post final decision reconsideration, RSA 151-C:8 (Supp. 1983), convince us that such a construction is warranted. Under a contrary interpretation, the board's decision of May 23, 1985, made with full knowledge of the impending moratorium, would effectively deny the parties any reconsideration of the board's decision as required by the statute.

Once a final decision is rendered, RSA 151-C:8, III (Supp. 1983) requires reconsideration upon request of one of the parties. It would be manifestly unjust to deny reconsideration just because the hearing extended beyond the effective date of the moratorium. The words in the statute which provide that the final decision after reconsideration should "be considered the final decision of the board," are intended merely to state that this is the final action of the board, and not intended to affect the significance of the board's initial decision as the "final decision."

By like reasoning, the amendment to RSA chapter 151-C, which revised the substance of the statute completely, does not affect the CON reconsideration procedures under RSA chapter 151-C (Supp. 1983). Therefore, in answer to question (4), RSA chapter

151-C (Supp. 1983) governs the future procedures to be taken by the board relative to the reconsideration of Whispering Pines' CON.

*Remanded.*

SOUTER, J., did not participate; the others concurred.