In re **CONSERVATORSHIP OF** Charles C. **BAUER,** Conservatee.

No. C7–89–1559.

Court of Appeals of Minnesota.

Feb. 13, 1990.

Thomas J. Hunziker, Dunkley, Bennett & Christensen, P.A., Minneapolis, for appellant conservator, First Fiduciary Corp.

Hubert H. Humphrey, III, Atty. Gen., David P. Iverson, Sp. Asst. Atty. Gen., St. Paul, for respondent, Minnesota Dept. of Human Services.

Considered and decided by KLAPHAKE, P.J., and KALITOWSKI and LESLIE *, JJ.

## OPINION

KLAPHAKE, Judge.

Conservator appeals an order affirming order of the probate court which directs conservator to reimburse the Department of Human Services for the conservatee's cost of care at the Minnesota Security Hospital for the period following conservatee's completion of a criminal sentence.

## FACTS

Charles C. Bauer (Bauer) was convicted of murder on June 9, 1972 for the February 1972 shooting death of a police officer. Bauer was sentenced to a maximum of 40 years in prison and committed to the custody of the Commissioner of Corrections. The Supreme Court reversed the conviction on August 20, 1976 and remanded the matter for a new trial, holding that the evidence of Bauer's mental condition was such that the court should have suspended proceedings and made further inquiry into his ability to stand trial.

On January 18, 1977 the district court found Bauer lacked the mental capacity to proceed with the criminal matter, stayed the proceedings, and committed Bauer to the Minnesota Security Hospital (MSH), under the civil commitment statute, as "mentally ill and dangerous to the public."

In January 1985, Bauer pleaded guilty to manslaughter in the first degree and was committed to the Commissioner of Corrections for 43 months. Bauer had already served in excess of 43 months in the Commissioner's custody prior to the disposition of his appeal in 1976. Bauer was given credit for time served and, as a result, was discharged by reason of expiration of sentence, although he remained in MSH under the civil commitment order.

The Minnesota Department of Human Services (respondent) conducted an investigation pursuant to Minn.Stat. 246.50–.55 (1988), and determined that it should be reimbursed for the full cost of Bauer's care between March 1, 1986 and April 30, 1988. Bauer's conservator, First Fiduciary Corporation (appellant), refused to pay the outstanding costs of $115,401.95, and respondent petitioned Hennepin County District Court for an order directing payment. An order based on the recommendation of the probate referee and countersigned by the district judge, was issued in November 1988 and affirmed, upon review, by the same judge in August 1989. Appellant now challenges the constitutionality of the order.

## ISSUE

May the Department of Human Services require the conservator to pay for conservatee's cost of care at the State Security

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

Hospital where conservatee was involuntarily committed incident to a criminal proceeding, but where the criminal matter has subsequently been resolved and no further penal incarceration is required?

## ANALYSIS

The statute requiring reimbursement for care at MSH provides:

> The commissioner shall determine the anticipated average per capita cost. The commissioner may establish one all inclusive rate or separate rates for each patient or resident disability group, and may establish separate charges for each facility. * * *
>
> For purposes of this subdivision "resident patient" means a person who occupies a bed while housed in a state facility for observation, care, diagnosis, or treatment.

Minn.Stat. § 246.50, subd. 5 (1988).

Appellant contests the legitimacy of the statute which requires Bauer's reimbursement of his cost of care at MSH when criminals serving time in state prison are not obligated to pay for their care. Appellant argues it is unconstitutional to require reimbursement when Bauer's commitment to MSH was initially made pursuant to criminal proceedings and was, like his original incarceration in Stillwater State Prison, intended to protect the residents of Minnesota from his dangerous behavior.

> The propriety of classification for the purpose of legislation is primarily for the legislature. Laws passed by the legislature are presumed to be valid, so we assume that the legislature makes inquiry and rightly determines the propriety of the classification which it adopts. *This court will not disturb the legislative determination unless the classification is clearly arbitrary and has no reasonable basis.* The uniformity clause of the Minnesota Constitution is not more restrictive than the equal protection clause of the Fourteenth Amendment of the Federal Constitution.

*Elwell v. Hennepin County,* 301 Minn. 63, 74, 221 N.W.2d 538, 546 (1974) (citations omitted), *quoted in Matter of McCannel,*

301 N.W.2d 910, 917 (Minn.1980) (emphasis in the original).

That legislative classifications demonstrate distinctions rationally related to legitimate legislative goals has been described as the preeminent expression of rationality analysis. *AFSCME Councils 6, 14, 65 and 96 v. Sundquist,* 338 N.W.2d 560, 570 (Minn.1983). Such an analysis poses three questions in this case: (1) Are all persons civilly committed to the Minnesota Security Hospital in receipt of the same care? (2) Are the distinctions separating those committed to the security hospital as mentally ill and dangerous and those incarcerated in penal institutions "genuine and substantial so as to provide a natural and reasonable basis * * * to justify different legislation adapted to their peculiar conditions and needs * * * "? *AFSCME,* 338 N.W.2d at 570, n. 12. (3) Is there a legitimate need to recoup expenses from those confined in state hospitals as opposed to those confined in prisons?

All persons committed to the state hospitals, whether committed voluntarily or involuntarily, or classified as "mentally ill and dangerous" or "mentally ill," receive psychiatric treatment according to their needs, in addition to room and board. Therefore, all those civilly committed to MSH receive the same care.

Second, although those committed as mentally ill and dangerous and criminals are confined, in part, for the protection of society, mentally ill and dangerous residents of MSH are also given medical treatment, as a matter of course, during their confinement. Thus, there is a genuine distinction between the services and care offered patients at MSH and that offered inmates at the state prisons.

Third, the services rendered to residents of the state hospitals are "geared to return * * * [them] to a state of mental or physical health," *In re Guardianship of Nelson,* 98 Wis.2d 261, 270, 296 N.W.2d 736, 740 (1980), and inure primarily to the benefit of the individuals served rather than to the benefit of the public as a whole. Consistent with the benefits provided, we find it is a rational exercise of legislative authority

to require all residents of MSH to reimburse the state for the cost of their care.

While civil commitment proceedings were instituted against Bauer under Minn.R. Crim.P. 20.01, after he was found incompetent to proceed with the criminal matter, he was committed under then existing Minn. Stat. Ch. 253A like any other person subject to a petition for civil commitment. Furthermore, by operation of law, Bauer was discharged from the original criminal proceedings by reason of expiration of sentence. Bauer was at MSH solely because of his civil commitment. Since the time period covered by the reimbursement order was after the criminal discharge, Bauer is obligated to reimburse the state as ordered.

### DECISION

Although the conservatee was initially committed involuntarily to the state security hospital, it is not unconstitutional for the Department of Human Services to require reimbursement for conservatee's cost of care following the time conservatee's criminal sentence expired but conservatee remained under a civil commitment to the hospital. The decision of the district court is affirmed.

Affirmed.