IN the MATTER OF the CARE &
MAINTENANCE OF: K.C., S.C., R.J.S., B.J.S.,
& C.W.: E.C., R.S., & L.S., Appellants,

v.

State of Wisconsin, DEPARTMENT OF HEALTH
& SOCIAL SERVICES, Respondent.

Supreme Court

*No. 87–0052. Argued December 1, 1987.—Decided February 25,
1988.*

(On bypass from court of appeals.)

(Also reported in 420 N.W.2d 37.)

For the appellant there were briefs by *Robert W. Pledl* and *Courtney, Pledl & Molter, S.C.,* Milwaukee and oral argument by *Robert W. Pledl.*

For the respondent there was a brief by *Robert H. Kletzien,* assistant counsel Department of Health and Social Services, Madison, and oral argument by *Robert H. Kletzien.*

WILLIAM G. CALLOW, J. This is an appeal from an order of the circuit court for Milwaukee county, Judge Frederick P. Kessler, which ordered

three parents whose children were adjudicated delinquent to pay the Wisconsin Department of Health and Social Services for the care and maintenance of their children while in the Department's custody at a secured correctional facility. The order appealed from was entered following a memorandum decision by Judge Patrick T. Sheedy which upheld the constitutionality of sec. 46.10, Stats. At the request of the parties, this court granted bypass pursuant to sec. (Rule) 809.60, Stats.

This appeal raises the question of whether sec. 46.10(2), Stats.,[1] which authorizes the Wisconsin Department of Health and Social Services (Department) to collect the cost of the care, maintenance, services and supplies from the parents of juveniles confined in a state institution, but which exempts adults in prisons and their parents from a similar liability, is unconstitutional on either of the following grounds: (1) It constitutes a denial of equal protection of the laws

---

[1]Section 46.10, Stats., provides in pertinent part:

**"Cost of care and maintenance, liability; collection and deportation counsel; collections; court actions; recovery.**
" . . .
"(2) Except as provided in sub. (2m), any person . . . admitted, committed or placed under ss. 48.34(4m) . . . receiving care, maintenance, services and supplies provided by any institution in this state including university of Wisconsin hospital and clinics, in which the state is chargeable with all or part of the person's care, maintenance, services and supplies . . . and, in the case of a minor child, the parents of the person, and their property and estates, including their homestead, . . . shall be liable for the cost of the care, maintenance, services and supplies in accordance with the fee schedule established by the department under s. 46.03(18).
. . .
"(2m) The liability specified in sub. (2) shall not apply to . . . persons 18 and older receiving care, maintenance, services and supplies provided by prisons named in s. 53.01."

under art. I, sec. 1, of the Wisconsin Constitution or the fourteenth amendment of the United States Constitution in that it establishes a statutory classification for which there exists no reasonable basis; or (2) it constitutes a denial of due process of the laws under art. I, sec. 13, of the Wisconsin Constitution or the fourteenth amendment of the United States Constitution. Because we conclude that secs. (2) and (2m) violate neither the guarantees of equal protection nor due process under both the Wisconsin and United States Constitutions, we affirm the order of the circuit court.[2] (All references in this opinion are to the 1985–86 statutes. Although there have been changes in the statutes during the period in which the Department seeks reimbursement, these changes have not been substantive.)

This appeal arises from actions initiated by the Department to collect from E.C.,[3] R.S., and L.S. (parents) the cost of their respective children's care, maintenance, services and supplies which were provided while their respective children were confined in

---

[2]The Department of Health and Social Services seeks to fix liability for a period from February, 1976, through February, 1985. The parents' equal protection claim turns on the existence of sub. (2m) of sec. 46.10, Stats. However, sub. (2m) was not effective until June 30, 1977, or well into the period for which the parents seek to be free from liability. *See* Chapter 29, sec. 555, Laws of 1977. In light of the decision reached in this case and for purposes of analysis, we will not differentiate between the different versions of the statutes applicable between 1976 and 1977.

[3]The petition filed by the Department of Health and Social Services initially named D.C., E.C.'s husband, as the party from whom payment was sought. After D.C. received notice, an order was entered finding D.C. and E.C. jointly liable. Because the appeal was brought solely by E.C., we will refer to the petition as having been brought against E.C.

various state institutions. E.C. is the mother of K.C. and S.C. These juveniles were adjudicated delinquent and transferred to the custody of the Department, Division of Corrections, at Wales on February 19, 1976, and November 24, 1976, respectively. Thereafter, in June of 1978 the Department petitioned the Milwaukee circuit court, children's division, for an order directing E.C. to pay $1,528 for the cost of K.C.'s and S.C.'s care and maintenance while at Ethan Allen School. The petition requested reimbursement for care and maintenance provided between February 19, 1976, through November, 1977.

R.S. is the father of B.J.S. and R.J.S. These juveniles were adjudicated delinquent and transferred to the custody of the Department, Division of Corrections, at Wales on June 6, 1979, and November 30, 1979, respectively. Thereafter, in May of 1985 the Department petitioned the Milwaukee county circuit court, children's division, for an order directing R.S. to pay $5,711 for the cost of B.J.S.'s and R.J.S.'s care and maintenance while at Ethan Allen School, Carmelite Home for Boys, Flambeau Camp, Lincoln Hills School, and Rock Valley Community Correctional Transition House. The petition requested reimbursement for care and maintenance provided from June 8, 1979, through August 13, 1981.

L.S. is the mother of C.W. He was adjudicated delinquent, and his custody was transferred to the Department, Division of Corrections, at Wales on March 15, 1984. In October of 1985 the Department petitioned the Milwaukee circuit court, children's division, for an order directing L.S. to pay $2,082 for the cost of C.W.'s care and maintenance while at Ethan Allen School and Lincoln Hills School for the period of March 15, 1984, through February 28, 1985.

In each of the above actions, the parents of the named juveniles were ordered to pay the assessed charges.[4] On March 11, 1986, Judge Sheedy consolidated the three actions for the purpose of hearing a challenge to the constitutionality of sec. 46.10(2), Stats. Shortly thereafter, E.C., R.S., and L.S. filed motions to dismiss the collection action on the grounds that sec. 46.10(2) and sub. (2m) were unconstitutional in that the provisions violated the parents' rights to due process and equal protection of the law. Following the submission of briefs, Judge Sheedy upheld the constitutionality of sec. 46.10(2) and sub. (2m) and denied the motions to dismiss.

In his memorandum decision upholding the constitutionality of sec. 46.10(2), Stats., Judge Sheedy concluded that there exists a rational basis for charging parents for the cost of the care and maintenance of their children while confined in a juvenile correctional facility. Relying upon the determination that there is a distinction between the care of minors (rehabilitative) and the care of adults (punitive), the circuit court concluded that no constitutional impairment exists in charging parents for a part of the cost of maintaining a minor in a juvenile correctional institution "if these payments are tailored to correspond to a parent's support obligation." After concluding that the challenged statute required that a parent pay only a reasonable amount for their child's support while their child was in the Department's custody, the circuit court held that neither the due process nor the

---

[4]R.S. was originally ordered by a Milwaukee County Judicial Court Commissioner to pay the assessed costs. On appeal before the circuit court, Judge Foley affirmed the order of the Court Commissioner.

equal protection rights of the parents were violated by sec. 46.10(2).

The parties subsequently entered into a stipulation which provided that: (1) the parents would not challenge the specific amounts owed and their ability to pay the assessed amounts, and (2) payments would be suspended pending the outcome of an appeal from the denial of the motion to dismiss. Thereafter, an order was entered finding each parent liable in the amount alleged and staying all payments pending appeal. The parents then filed a notice of appeal. Following a petition to bypass filed by the Department and joined by the parents, this court granted the bypass request on July 29, 1987.

We must determine in this case (1) whether sec. 46.10(2), Stats., violates the equal protection guarantees of either the State Constitution or the Federal Constitution and, if it does not, (2) whether it violates the due process clause of either the State Constitution or the Federal Constitution.

In determining whether sec. 46.10(2), Stats., is constitutional, the circuit court's findings of fact will be upheld unless they are clearly erroneous. *Treiber v. Knoll,* 135 Wis. 2d 58, 64, 398 N.W.2d 756 (1987). However, the circuit court's holding that sec. 46.10(2) is constitutional is a question of law, and thus we do not give deference to the circuit court's decision. *Id.*

In reviewing the constitutionality of sec. 46.10(2), Stats., we recognize there is a strong presumption that a legislative enactment is constitutional. *Chappy v. LIRC,* 136 Wis. 2d 172, 184, 401 N.W.2d 568 (1987). Consistent with this presumption, a party challenging the constitutionality of a statute must prove beyond a

reasonable doubt that the act is unconstitutional. *Id.* at 185. Moreover, wherever doubt exists as to a statute's constitutionality, it must be resolved in favor of constitutionality. *County of Portage v. Steinpreis,* 104 Wis. 2d 466, 478, 312 N.W.2d 731 (1981).

With this in mind, we turn to the question of whether sec. 46.10(2), Stats., is unconstitutional because it violates the constitutional guarantee of equal protection under either art. I, sec. 1, of the Wisconsin Constitution,[5] or the fourteenth amendment of the United States Constitution.[6] In addressing the parent's contention that sec. 46.10(2) violates the guarantees of equal protection under both the State and Federal Constitutions, we note that the guarantee of equal protection under the Wisconsin Constitution is substantially equivalent to the guarantee of equal protection under the United States Constitution. *Treiber,* 135 Wis. 2d at 68. We therefore apply the same legal analysis to test the constitutionality of the statute under the equal protection guarantees of either Constitution.

The test to be applied in analyzing an equal protection challenge has often been stated by this

[5]Article I, sec. 1, of the Wisconsin Constitution provides:

"All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

[6]The equal protection clause is included in the fourteenth amendment of the United States Constitution which states in pertinent part: "nor [shall any State] deny to any person within its jurisdiction the equal protection of the laws."

court. Unless the challenged statute affects a "fundamental right" or creates a classification based on a "suspect class," the standard this court uses in reviewing the constitutionality of the statutory classification is the "rational basis" test. *E.g., Treiber,* 135 Wis. 2d at 70. Where a "fundamental right" or "suspect class" is involved, the challenged statute must pass strict scrutiny. *Id.*

In this case the test to be applied is the rational basis test. Section 46.10, Stats., affects neither a fundamental right nor a suspect class. As we noted in *In Matter of Guardianship of Nelson,* 98 Wis. 2d 261, 268, 296 N.W.2d 736 (1980), sec. 46.10 affects the area of economics and social welfare, and its constitutionality is therefore analyzed using the rational basis test. Under the rational basis test, we must uphold a legislative classification if there exists any reasonable basis to justify the classification. *State v. Hart,* 89 Wis. 2d 58, 65, 277 N.W.2d 843 (1979). In determining whether there exists any reasonable basis, "it is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination." *Sambs v. City of Brookfield,* 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980).

The parents argue that sec. 46.10, Stats., in charging for the cost of the care and maintenance of a juvenile confined in a juvenile correctional facility, while exempting an adult in prison from similar liability, violates the equal protection clause because it treats two similarly situated classes dissimilarly. According to the parents, there is no distinction between the confinement of juveniles and adults. Specifically, the parents argue that juveniles and

adults are both confined for the protection of the public, and while confined both receive similar care, services and supplies. Based on their conclusion that there is no distinction between the confinement of juveniles and adults, the parents contend there is no rational basis to support sec. 46.10.

■

We conclude there is a rational basis for the legislature's decision to charge for the cost of care and maintenance received by juveniles while exempting adults from similar liability. Contrary to the assertions of the parents, a juvenile's confinement is not identical to that of an adult in a prison. While an adult is incarcerated to protect the public and punish the adult, a juvenile's confinement is generally focused upon promoting the best interests of the child rather than punishing the child. Although there is some overlap in the nature of a juvenile's and an adult's confinement, the Children's Code's focus on the best interests of the child provides a rational basis to support the liability provision of sec. 46.10(2), Stats.

■

Individuals confined in penal institutions are, in general, incarcerated to protect the public.[7] Their confinement is to have the effect of a sentence at hard labor. Sec. 973.013(1)(b), Stats. In *Nelson* we examined the nature of prison confinement and concluded:

---

[7]In *Hilber v. State,* 89 Wis. 2d 49, 56 n. 9, 277 N.W.2d 839 (1979), we noted the following five purposes in imposing sanctions upon those who violate the criminal law: "(1) to prevent the wrongdoer from committing further crimes by physically restraining him or her; (2) to deter the wrongdoer and others generally from violating the law; (3) to rehabilitate the wrongdoer; (4) to effect retribution upon the wrongdoer; (5) to provide restitution for the victim."

"Theoretically the prisoner is incarcerated as a measure to prevent harm to the public. Restrained of his liberty, he is not free to commit criminal acts. This is an historic and a primary reason for the existence of prisons. Factually, the services rendered to the prisoner are ... geared to sustain him on a day-to-day basis while he serves out his term. This is not to deny that rehabilitation and resocialization programs exist and play an important role in a prison. These programs, however, are as valuable to the public as they are to the individual prisoner since society has a high interest in protecting itself from renewed criminal conduct after release of the prisoner." *Nelson,* 98 Wis. 2d at 270.

Although the juvenile system is similar in some respects to the criminal system, we have specifically rejected an exact equation of institutional placement of a juvenile with the incarceration of an adult. *In re Interest of J.K.,* 68 Wis. 2d 426, 430, 228 N.W.2d 713 (1975). In contrast to the Criminal Code, the Children's Code is permeated with the benevolent purpose of improving a child's condition, not with punishing past conduct. *In re Alley,* 174 Wis. 85, 91–92, 182 N.W. 360 (1921). Because of this, the juvenile law is not to be administered as a criminal statute. *Interest of J.K.,* 68 Wis. 2d at 431. Instead, it must be administered consistent with the Children's Code's philosophy of rehabilitation and treatment. *See Winburn v. State,* 32 Wis. 2d 152, 161, 145 N.W.2d 178 (1966). "'For the delinquent child, the aim of the court is to correct, re-educate, re-direct, and rehabilitate, rather than to punish or to seek retribution for misdeeds.'" *Id.* at 158; *see also* League of Women Voters of Wisconsin, Inc., *"In the Interest of ...." Juvenile Justice in*

*Wisconsin,* 93 (1976) (the focus of both central and correctional staffs is on correction for the long-range benefit of youth); *Juvenile Justice and Delinquency Prevention,* Report of the Task Force on Juvenile Justice and Delinquency Prevention, 293 (National Advisory Committee on Criminal Justice Standards and Goals 1976) (The protective rehabilitative orientation is paramount in delinquency proceedings despite recognition that the judicial processing of juveniles has a deterrent function. Thus, delinquency jurisdiction cannot properly be viewed as a mere subset of the adult criminal process. It remains part of a different system oriented specifically to juveniles and emphasizes the objectives of treatment and rehabilitation.).

We reject the parents' argument that the primary purpose behind a decision to transfer the custody of a juvenile to the custody of the Department, pursuant to sec. 48.34(4m), Stats.,[8] is to protect the public. Section 48.34(4m) requires that, before a juvenile may be confined in a secured correctional facility, a judge must determine that: (1) the juvenile has committed a serious criminal offense; (2) the juvenile is a danger to the public; and (3) the juvenile is in need of restrictive custodial treatment, i.e., that confinement will be helpful to the child. Thus, in determining whether to

---

[8]Section 48.34(4m), Stats., provides that a judge may "[t]ransfer legal custody to the subunit of the department administering corrections for placement in a secured correctional facility, but only if:

"(a) The child has been found to be delinquent for the commission of an act which if committed by an adult would be punishable by a sentence of 6 months or more; and

"(b) The child has been found to be a danger to the public and to be in need of restrictive custodial treatment."

confine a juvenile, a judge must balance the interest of society with the interest of the child. In this balancing, however, the interest of the child, not the protection of the public, is paramount. *See* sec. 48.01(2), Stats.; *See also In Interest of D.H.,* 76 Wis. 2d 286, 304–05 n. 12, 251 N.W.2d 196 (1977) (this court stated that, although retribution as well as rehabilitation plays a role in the function of the juvenile court, the paramount consideration in juvenile proceedings is still the welfare of the juvenile).

Our conclusion that the interest of the child must be paramount in deciding whether to confine a juvenile is consistent with the release provisions of sec. 48.53, Stats. Under sec. 48.53, a juvenile transferred to the custody of the Department "shall be discharged as soon as the department determines that there is a reasonable probability that it is no longer necessary either for the rehabilitation and treatment of the child or for the protection of the public that the department retain legal custody." Thus, a juvenile must be released from the custody of the Department at any time upon a showing that there is a reasonable probability that confinement is no longer necessary for the child's rehabilitation. A juvenile's ability to be released upon such a showing is in stark contrast to an adult whose confinement is generally for a fixed period of time.

Moreover, the Children's Code, unlike the Criminal Code, consistently stresses the continued participation of the child's parents and the preference for maintaining the family unit. Specifically, sec. 48.48(1), Stats., requires the Department to enforce the laws relating to delinquent children in cooperation with the children's parents. Whenever possible, the unity of the family must be preserved. Sec. 48.01(1)(b). Parents

of a juvenile must be notified and given an opportunity to be heard prior to an order changing the placement of the child or extending the child's present placement. Secs. 48.357 and 48.365. In addition, any order continuing placement outside the child's home must include a report explaining why returning the child to his or her home is not feasible. Sec. 48.365(2g).

Thus, while the incarceration of adults is designed primarily to protect the public and punish the individual, the confinement of juveniles focuses primarily upon rehabilitating the juvenile. We conclude that this difference in the nature of the confinement— rehabilitation in the juvenile system, protection of the public in the prison system—provides a rational basis for charging for the cost of a juvenile's care and maintenance while exempting adults in prison from similar liability. We, therefore, hold that sec. 46.10(2), Stats., in charging for the care and maintenance of juveniles, while exempting prisoners from similar liability, does not violate the equal protection clause of either the State or Federal Constitution.

We note that the parents' reliance upon *In re Jerald C.,* 36 Cal. 3d 1, 678 P.2d 917 (1984), is inapposite. In the *Jerald C.* case, the California Supreme Court held that it was unconstitutional to charge parents for the cost of confining their children in a juvenile institution. In reaching this conclusion, the court focused on the fact that in California confinement of a juvenile is designed in part to benefit society. Because of this benefit to society, the court concluded that the statute requiring parents to pay for the confinement was unconstitutional because "[t]o charge the cost of operation of state functions conducted for public benefit to one class of society is arbitrary and violates the basic constitutional guarantee of

equal protection of the law." *Id.* at 6. The court did not, however, discuss to what extent the child benefits from his or her confinement. Although it may be unconstitutional to charge an individual for care which benefits society only, we are not convinced that the mere existence of some benefit to society is sufficient to make such a statute unconstitutional. Were the Wisconsin system such that the primary benefit was to society, we would be inclined to follow the *Jerald C.* decision. However, because the juvenile system in Wisconsin is designed primarily to benefit the child, the decision in *Jerald C.* is unpersuasive.

The parents also argue that sec. 46.10(2), Stats., violates the equal protection clause in that it charges all parents of juveniles for their care and maintenance, despite the fact that under sec. 48.18, some juveniles may be waived into adult court and treated exactly as an adult. We first note that juveniles who are waived into adult court constitute a subclass of all juveniles and that the parents in the present case are not part of that subclass. It does not violate the equal protection rights of the parents in this action to charge for the care and maintenance of juveniles, whether waived into adult court or not. It is for the parents of the juveniles who are waived into adult court to assert a violation of equal protection. Because the parents in this case are not such parents, they do not have standing to challenge the statute on the grounds that it violates the rights of the parents of juveniles who were waived into adult court. *See Moedern v. McGinnis,* 70 Wis. 2d 1056, 1063, 236 N.W.2d 240 (1975); *Broadrick v. Oklahoma,* 413 U.S. 601, 610 (1973). Accordingly, we do not address the question of whether sec. 46.10(2) violates the equal

protection clause in charging the parents of juveniles waived into adult court while exempting adults in prison from similar liability.

We next turn to the question of whether requiring parents to pay for the care and maintenance of their children confined in a juvenile facility, without a finding that the parents are responsible for the conduct of the juveniles which prompted confinement of their children, violates the parents' due process rights. According to the parents, absent a finding that the parents are responsible for their children's conduct, collection of the cost of their children's care and maintenance violates due process by making one person responsible for the crimes of another.

In Wisconsin, parents have an obligation to support their children. Secs. 49.90(1m)(a)1 and (b)1, Stats. This duty of support is a continuing duty which does not end because custody has been transferred to another party. *Cf. Krause v. Krause,* 58 Wis. 2d 499, 507, 206 N.W.2d 589 (1973) (parent not granted custody of child must pay child support). Sec. 46.10, in requiring a parent to pay for the care and maintenance of his or her child while the child is in the custody of the Department does not make a parent responsible for the crimes of another; it only continues the parent's prior existing duty of support. Furthermore, we note that the New York court of appeals, in addressing a similar due process challenge, summarily dismissed the challenge, stating "[s]ince a parent is under a duty to support his child ... it may not be said that the statute now before us ... deprives the appellant of her property without due process of law." *Matter of Jesmer v. Dundon,* 29 N.Y.2d 5, 8, 271 N.E.2d 905, 906 (1971).

Although it is possible that a statute requiring a parent to support his or her child in the custody of the Department could take a parent's property without due process of law if the amount exacted was unreasonable or in excess of the cost of the child's maintenance while the child is in custody, the charge imposed by sec. 46.10(2), Stats., is neither unreasonable nor in excess of the cost of the child's custody. Under sec. 46.10(2), parents of children in juvenile correctional institutions are liable for the cost of care, maintenance, services and supplies provided to their children. This liability is imposed according to a uniform fee system established by the Department, pursuant to sec. 46.03(18). Under the uniform fee system, parents are charged according to their ability to pay, with maximum daily billable limits not to exceed $5 subject to adjustment by the Department in direct proportion to the Consumer Price Index. Wis. Admin. Code Sec. HSS 1.03(21) (1987). Furthermore, if the maximum monthly payment rate would create a documentable hardship, a lower maximum monthly payment rate may be authorized. We are satisfied that the present maximum billable limits guarantee that the charge to the parents does not exceed the cost of providing for a juvenile's maintenance while custody. Moreover, the parents do not argue persuasively that the maintenance charge exceeds the cost of maintaining their children in their homes. Because sec. 46.10 only continues a parent's ordinary duty of support and because the fees charged are based upon a parent's ability to pay and cannot exceed the cost of the service provided, the imposition of fees under sec. 46.10(2) does not violate the parents' due process rights.

*By the Court.*—The order of the circuit court is affirmed.