RACINE STEEL CASTINGS, a division of Evans Products Company, a foreign corporation, Plaintiff-Respondent,

v.

John R. HARDY, Defendant-Appellant-Petitioner,

Jose KANSHEPOLSKY, M.D., The Medical Protective Ins. Co., Good Samaritan Medical Center-Deaconess Hospital Campus, Patients Compensation Fund, Possibly Interested Parties Added by Court Order.

Supreme Court

*No. 86–1016. Argued April 25, 1988.—Decided June 16, 1988.*

(Also reported in 426 N.W.2d 33.)

554

For the defendant-appellant-petitioner there was a reply brief by *Boyd M. McGranaghan, McGranaghan & Stawski, Marjan R. Kmiec* and *Kmiec Law Offices,* Milwaukee and oral argument by *Boyd M. McGranaghan.*

For the plaintiff-respondent there was a brief by *J. Ric Gass, Patti J. Kurth* and *Kasdorf, Lewis &*

*Swietlik, S.C.,* Milwaukee and oral argument by *J. Ric Gass.*

LOUIS J. CECI, J. This case is before the court on petition for review of a decision of the court of appeals, *Racine Steel Castings v. Hardy,* 139 Wis. 2d 232, 407 N.W.2d 299 (Ct. App. 1987), which affirmed a judgment of the circuit court for Milwaukee county, George A. Burns, Jr., circuit judge. The issue presented for review concerns the constitutionality of sec. 102.29(3), Stats. In particular, respondent, Racine Steel Castings (Racine Steel), asserts an equal protection claim under the equal protection clause of the fourteenth amendment of the United States Constitution, challenging the provision of sec. 102.29(3) which bars an employer from recovering sums paid in worker's compensation benefits from amounts awarded in a malpractice action for the aggravation of an injury by a physician, chiropractor, or podiatrist.[1] Racine Steel bases its equal protection challenge upon the assertion that there is no rational basis for precluding employer reimbursement from medical malpractice proceeds awarded against a physician, chiropractor, or podiatrist, while permitting employer

---

[1]Before the trial court, Racine Steel articulated an alternative constitutional infirmity, asserting that sec. 102.29(3) unconstitutionally deprived employers of due process by assertedly arbitrarily denying employers subrogation. The trial court did not address this issue because the equal protection arguments were found dispositive. The court of appeals likewise did not address the due process argument. Because this issue was neither briefed nor argued before the court in oral argument, we do not address this issue. *See, e.g., Estate of Atkinson: Atkinson v. Department of Taxation,* 261 Wis. 481, 484, 53 N.W.2d 185, *reh'g denied* 261 Wis. 484, 54 N.W.2d 52 (1952); *Platta v. Flatley,* 68 Wis. 2d 47, 63, 227 N.W.2d 898 (1975).

reimbursement from proceeds awarded in all other third-party actions, including actions against those health care providers not enumerated under sec. 102.29(3). The court of appeals found the statute unconstitutional. We reverse.

This case arose from the slip-and-fall injury of petitioner, John R. Hardy (Hardy), suffered on July 15, 1981, during the course of his employment with Racine Steel. Hardy sought treatment for discomfort associated with his work injury from Jose Kanshepolsky, M.D. (Dr. Kanshepolsky). Dr. Kanshepolsky performed a surgical procedure upon Hardy described as an "anterior cervical fusion," which rendered him a quadriplegic. It is undisputed that Racine Steel has paid and will continue to pay worker's compensation benefits to Hardy for his aggravated injury.

Hardy filed a submission of controversy with the patients compensation panel pursuant to ch. 655, Stats. (1983–84), alleging negligence on the part of Dr. Kanshepolsky, on March 7, 1983. On November 30, 1984, the panel found Dr. Kanshepolsky negligent in his treatment of Hardy. A settlement was then reached between Dr. Kanshepolsky and Hardy. During the pendency of the case before the patients compensation panel, on August 29, 1983, Racine Steel filed a summons and complaint, seeking a declaratory judgment that sec. 102.29(3) is unconstitutional and that Racine Steel was entitled to subrogation against any proceeds of the medical malpractice claim. Subsequently, on February 26, 1986, the trial court found sec. 102.29(3) unconstitutional and held that Racine Steel was accordingly entitled to subrogation. Specifically, the trial court held:

"[Section 102.29(3)] denies equal protection to all Wisconsin employers whose employees' work-related injuries are aggravated by doctors, chiropractors or podiatrists. This limited classification, as analyzed above, makes no sense, is wholly arbitrary and frustrates the general purpose and sound public policy of third-party liability as set forth in 102.29(1) of the Workers' Compensation Act. Because it is arbitrary and has no rational basis, it must 'rest on grounds wholly irrelevant to the achievement of the State's objective,' as set forth in *McGowan v. Maryland,* supra."

Because the court found the equal protection argument dispositive, it did not resolve the due process issue.

The court of appeals affirmed the decision of the trial court, likewise finding no rational basis to support the statutory classification. *Racine Steel,* 139 Wis. 2d at 239–40. We disagree and reverse the decision of the court of appeals.

██

The question before us concerns the constitutionality of a statute, which is a question of law reviewable by this court without deference to the decisions of the courts below. *Guertin v. Harbour Assurance Co. of Bermuda, Ltd.,* 141 Wis. 2d 622, 633, 415 N.W.2d 831 (1987). This court has recently restated the great deference accorded to legislative classifications: "In analyzing a statute's constitutionality, '[e]very presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality ....'" *State ex rel. Jones v. Gerhardstein,* 141 Wis. 2d 710, 733, 416 N.W.2d 883 (1987) (quoting *Chappy v. Labor & Industry Review*

_Commission,_ 136 Wis. 2d 172, 185, 401 N.W.2d 568 (1987)). The burden is upon the challenger of a statutory classification to prove abuse of legislative discretion beyond a reasonable doubt. _In Matter of Care & Maintenance of K.C.: K.C. v. Department of Health & Social Services,_ 142 Wis. 2d 906, 914–15, 420 N.W.2d 37 (1988); _Sambs v. City of Brookfield,_ 97 Wis. 2d 356, 370, 293 N.W.2d 504, _cert. denied_ 449 U.S. 1035 (1980). More specifically, in reviewing a statutory classification under an equal protection analysis, unless the statute impinges upon a fundamental right or creates a classification based upon a suspect criterion, the statute will be upheld if there exists a rational basis to support the challenged classification. _Matter of Care & Maintenance of K.C.,_ 142 Wis. 2d at 916. Where a fundamental right or suspect class is implicated, strict scrutiny will be applied to examine the statute. _Id._

Because neither party in the present case asserts the existence of a fundamental right or implication of a suspect class, this court will examine the challenged classification under sec. 102.29(3) for a rational basis. Under this rational basis analysis, "[e]qual protection of the law is denied only where the legislature has made irrational or arbitrary classification. ... The basic test is not whether some inequality results from the classification, but whether there exists any reasonable basis to justify the classification." _Guertin,_ 141 Wis. 2d at 634 (quoting _Omernik v. State,_ 64 Wis. 2d 6, 18–19, 218 N.W.2d 734 (1974)). Moreover, where the legislative rationale is not apparent, the investigation for a rational basis is not completed:

"[I]t is the court's obligation to locate or to construct, if possible, a rationale that might have influenced the legislature and that reasonably upholds the legislative determination. The rationale which the court locates or constructs is not likely to be indisputable. But it is not our task to determine the wisdom of the rationale or the legislation. The legislature assays the data available and decides the course to follow." *Sambs*, 97 Wis. 2d at 371.

Section 102.29 generally governs third-party liability to recipients of worker's compensation. Third-party liability in malpractice actions is specifically addressed under 102.29(3):

"Nothing in this chapter shall prevent an employe from taking the compensation he or she may be entitled to under it and also maintaining a civil action against any physician, chiropractor or podiatrist for malpractice. *The employer or compensation insurer shall have no interest in or right to share in the proceeds of any civil action against any physician, chiropractor or podiatrist for malpractice.*"[2] ( Emphasis added.)

That portion of sec. 102.29(3) which bars an employer from sharing in malpractice award proceeds is asserted to constitute an unconstitutional classification because such a sharing right exists generally as to all other third parties, including health care providers other than physicians, chiropractors, or podiatrists. Racine Steel has sought to demonstrate the alleged disparity by explaining that as a result of the opera-

[2]That portion of sec. 102.29(3) barring subrogation against proceeds awarded in a malpractice action against a physician, chiropractor, or podiatrist (emphasized above) has recently been repealed by 1987 Wis. act 179, sec. 13 (effective date April 1, 1988).

tion of the statute, two employers who are paying additional compensation for medical aggravation of a work-related injury are treated differently: one employer is barred from subrogation against a medical malpractice award because of the fortuity that its employee suffers an aggravation at the hands of a health care provider who is a physician, whereas a similarly situated employer whose employee's injury is aggravated by a dentist is entitled to share in the proceeds of a malpractice action.

Our analysis of the propriety of the classification embodied in sec. 102.29(3) commences with our rejection of the analytical framework set forth by Racine Steel. Specifically, we fundamentally disagree with the argument of Racine Steel that sec. 102.29(3) creates impermissible classifications of *employers.* Section 102.29(3) applies equally to all employers. Fortuity may operate such that the statute's provisions deny subrogation to employer A one day and permit subrogation to the same employer regarding the injury of a different employee the following day. In short, whether employer A or employer B is affected unfavorably by the provisions of sec. 102.29(3) is not due to a statutory classification of employers but is rather a function of circumstances equally likely to befall any employer. As observed by this court in *Treiber v. Knoll,* 135 Wis. 2d 58, 68–69, 398 N.W.2d 756 (1987), "The equal protection clause of the fourteenth amendment is designed to assure that those who are similarly situated will be treated similarly. ... Thus, where those who are similarly situated are treated similarly, no equal protection violation occurs." *Cf. Wirth v. Ehly,* 93 Wis. 2d 433, 448–49, 287 N.W.2d 140 (1980). Since employers as a group are

similarly treated, any equal protection violation which might be implicated under the statute does not fail to accord equal protection between employers. Accordingly, the question we must address is whether Racine Steel has standing, as a third party, to challenge the statutory classification of health care providers under sec. 102.29(3).

This court has previously addressed the question of standing to challenge the constitutionality of a statute: "In order to be able to raise [a] constitutional question ... , a party must have standing. A person does not have standing to challenge a statute on constitutional grounds upon a point not affecting his rights. Nor can one challenge the unequal protection afforded to members of a class unless he is a member of that class." *Wirth,* 93 Wis. 2d at 448–49. *See also Mast v. Olsen,* 89 Wis. 2d 12, 16, 278 N.W.2d 205 (1979); *Moedern v. McGinnis,* 70 Wis. 2d 1056, 1063, 236 N.W.2d 240 (1975). As explained above, Racine Steel is not a member of the class denied equal protection. However, in some instances a party may have standing to challenge the statutory classification of third parties on equal protection grounds. *See generally* L. Tribe, American Constitutional Law, sec. 3–19 (2d ed. 1988). *See also Secretary of State of Maryland v. Joseph H. Munson Co.,* 467 U.S. 947, 956 (1984); *Craig v. Boren,* 429 U.S. 190 (1976), *reh'g denied* 429 U.S. 1124 (1977); *Barrows v. Jackson,* 346 U.S. 249, *reh'g denied* 346 U.S. 841 (1953). In this regard, it should be noted that Racine Steel does have a pronounced economic stake in challenging the statute. Additionally, it is significant that the group subject to classification under sec. 102.29(3)—health care providers—would, in all likelihood, have no incentive to ever

563

challenge the constitutionality of the statute: whether employees or employers are to be the beneficiaries of the proceeds of a malpractice award would be of little consequence to any of the health care providers specified under sec. 102.29(3). This court emphasized the significance of a party having a personal stake in the outcome of litigation in *Mast:* "A party has standing to challenge a statute if that statute causes that party injury in fact and the party has a personal stake in the outcome of the action." 89 Wis. 2d at 16. *See also In Matter of Complaint Against Grady,* 118 Wis. 2d 762, 773, 348 N.W.2d 559 (1984). There can be no question that Racine Steel has established injury in fact: the challenged statute bars Racine Steel from recouping worker's compensation payments from the medical malpractice award. That Racine Steel has a personal stake in the constitutionality of sec. 102.29(3) is equally apparent. A personal stake is sufficient to confer standing where there exists a logical nexus between status asserted and the constitutional infringements alleged. *Moedern,* 70 Wis. 2d at 1064; *Tri-State Home Improvement v. Labor & Industry Review Commission,* 111 Wis. 2d 103, 114, 330 N.W.2d 186 (1983). The nexus could scarcely be stronger than it is in the present case, since employers are the express object of the challenged classification under sec. 102.29(3). Thus, because Racine Steel, as an employer, has a strong economic interest in challenging the constitutionality of the classifications within sec. 102.29(3) which is absent as to the group classified under the statute, we hold that it has third-party standing to advocate the unconstitutionality of sec. 102.29(3).

■

Additionally, we note that Racine Steel's concession that sec. 102.29(3) would be cured of the alleged disparities if subrogation were denied to *all* health care providers does not threaten Racine Steel's standing. Certainly, if the only remedy which would be available to respond to the purported equal protection violation would be the expansion of the class as to which employers were denied subrogation, Racine Steel would not be "harmed" without such "relief" and would, therefore, not have standing to challenge the statute. However, "when the 'right invoked is that of equal treatment,' the appropriate remedy is a *mandate* of equal treatment, a result that can be accomplished by withdrawal of benefits from the favored class as well as by extension of benefits to the excluded class." *Heckler v. Mathews,* 465 U.S. 728, 740 (1984) (emphasis in original). Consequently, Racine Steel has demonstrated sufficient injury and personal stake in the constitutionality of sec. 102.29(3) to confer standing, notwithstanding the fact of its concession that a broader, and thus less favorable, statute would resolve the alleged unconstitutional disparity under sec. 102.29(3).

Having found that Racine Steel has standing to challenge sec. 102.29(3), we proceed to consider the merits of the equal protection challenge. We must determine whether Racine Steel has established beyond a reasonable doubt that there exists no rational basis for classification presented under sec. 102.29(3).

■

Underlying our analysis of the constitutionality of sec. 102.29(3) is a familiar principle: this court is firmly committed to avoiding disruption of the all-pervasive legislative scheme which balances the com-

peting interests of employer against employee. *Mulder v. Acme-Cleveland Corp.,* 95 Wis. 2d 173, 180, 290 N.W.2d 276 (1980). In *Jenkins v. Sabourin,* 104 Wis. 2d 309, 311 N.W.2d 600 (1981), the court refused to tamper with the worker's compensation system to respond to an alleged inequity. In *Jenkins,* the court determined that the exclusivity of remedy provisions of the worker's compensation law precluded a common law cause of action by an employee against an employer for negligent provision of medical care. The court observed some apparent inequity: "If malpractice is malpractice is malpractice, why not malpractice against any health provider even though care is provided in the course of conduct as an employer." *Id.* at 322. Nevertheless, the court held that unless it were convinced of constitutional infirmity, "To the extent that the present law may be disparate, unequal, or uneven in its application, it is a question for the legislature to address." *Id.* at 323. In the present case the legislature has responded to the presently alleged inequity by repealing the contested provision of sec. 102.29(3). 1987 Wis. act 179, sec. 13. However, the fact that the legislature has altered the worker's compensation scheme by its own amendment neither indicates the absence of a rational basis for the legislation as it previously existed nor creates a license for this court to disrupt that scheme for the purpose of this case.

The bar to employer subrogation against malpractice proceeds was introduced into the worker's compensation scheme in 1949. Chapter 107, sec. 7, laws of 1949. As first enacted, however, only physicians and surgeons were included within the subrogation proscription. The drafting records contain no revelation of the purpose sought to be accomplished by the limited

subrogation bar. The court of appeals, however, opined that an examination of the legislative history of the statute suggests that a rational basis for the statute may once have existed.

Specifically, the court of appeals and Hardy, on appeal, outline the fact that at the time the subrogation bar was enacted in 1949, employers were entitled to name a panel of physicians from which the employee was to choose. Sec. 102.42(2), Stats. (1949). Because the employer limited the employee's choice of physicians to those it had itself chosen, the rational basis addressed by the court of appeals presumably existed in the fact that the employee should not suffer by foregoing full economic remuneration from awards resulting from the malpractice of a physician selected by the employer. In 1975, both sec. 102.29(3) and sec. 102.42(2) were amended to include within the subrogation bar physicians, chiropractors, and podiatrists. Chapter 147, secs. 24, 28, laws of 1975. This articulated rational basis under which the burden of the malpractice of physicians, chiropractors, and podiatrists was deemed justifiably placed upon employers who had themselves chosen a panel of practitioners was present within ch. 102 until 1977 when the employer's right to name these health care providers under sec. 102.42(2) was removed. Chapter 195, sec. 24, laws of 1977. While it is true that the relationship between sec. 102.42(2) and sec. 102.29(3) may have constituted a rational basis for the classification of physicians, chiropractors, and podiatrists under sec. 102.29(3), merely because this relationship has been terminated, it does not follow that an equally forceful rational basis does not elsewhere exist.

The court of appeals held, and Hardy would appear to concede, that there does exist a rational

basis which would support a distinction in subrogation rights between third parties generally and all health care providers. *See Racine Steel,* 139 Wis. 2d at 238. This classification would be supported by the rational basis embodied in the distinction between the fact that a third party who is not a health care provider is usually responsible for an original injury, whereas health care providers are most often the cause of the aggravation of an injury whose origin was directly the responsibility of the employer. *See* sec. 102.03, Stats. This distinction between malpractice cases and ordinary third-party actions was observed by Professor Larson: "A practical difficulty that attends the application of ordinary third-party rules to malpractice cases arises from a fundamental difference between these aggravation cases and third-party cases in which the wrongdoer caused the original injury." 2A A. Larson, The Law of Workmen's Compensation, sec. 72.65(a) at 14–228.64 (1987). Accordingly, there exists a rational basis for permitting employer subrogation against proceeds of a claim against a third person whose conduct has caused or contributed to the occurrence of the original injury, while denying subrogation against proceeds of a malpractice claim where the employer was the party responsible for the original injury. Viewed in this light, it is apparent that there is a rational basis for the subrogation bar in sec. 102.29(3) and, accordingly, that the statutory challenge is more precisely an argument that it is underinclusive. Stated otherwise, the challenge to sec. 102.29(3) is not to the inclusion of physicians, chiropractors, and podiatrists under sec. 102.29(3), but rather to the exclusion of other health care providers within the statute.

Professor Tribe, commenting upon underinclusiveness, has observed:

> "Parallel to its concern that the political process be allowed primacy in defining the ends to be served, the Court has recognized the legislative need for approximation in choosing the means of serving them.
>
> \* \* \*
>
> "'Underinclusiveness' is one such variant of approximation which the Court may invalidate as too arbitrarily departing from 'mathematical nicety.' Underinclusive classifications do not include all who are similarly situated with respect to a rule, and thereby burden less than would be logical to achieve the intended government end. In defense of underinclusiveness it has been argued that piecemeal legislation is a pragmatic means of effecting needed reforms, where a demand for completeness may lead to total paralysis ...." L. Tribe, *supra* p. 8, § 16–4 at 1446–47 (footnotes omitted).

The United States Supreme Court has consistently accorded some tolerance to the failure of legislative classifications to address problems with absolute precision.

> The problem of legislative classification is a perennial one, admitting of no doctrinaire definition. Evils in the same field may be of different dimensions and proportions, requiring different remedies. Or so the legislature may think. *Tigner v. Texas,* 310 U.S. 141 [(1940)]. Or the reform may take one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind. *Semler v. Dental Examiners,* 294 U.S. 608 [1935)]. The legislature may select one

phase of one field and apply a remedy there, neglecting the others. *A. F. of L. v. American Sash Co.*, 335 U.S. 538 [(1949]. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, *reh'g denied* 349 U.S. 925 (1955).

In seeking to preserve, to the greatest extent possible, the judgment of the legislature, this court has similarly recognized that if "the law presumably hits the evil where it is most felt, it is not to be overthrown because there are other instances to which it might have been applied." *State v. Hart*, 89 Wis. 2d 58, 68–69, 277 N.W.2d 843 (1979) (quoting *State ex rel. Baer v. Milwaukee*, 33 Wis. 2d 624, 634, 148 N.W.2d 21 (1967)). In *Hart*, the court upheld legislation providing for mandatory criminal court jurisdiction over sixteen- and seventeen-year-olds charged with violation of the motor vehicle code upon finding that promotion of highway safety was a rational basis for the classification which treated children over sixteen who violate the motor vehicle code differently from those who violate other criminal statutes. The court sustained the legislative classification upon the above-stated rationale, notwithstanding a challenge to the effect that the legislation was underinclusive with respect to its rational basis since the statute failed to include within its provisions conduct outside the motor vehicle code which could cause danger on the highway. Likewise, as to failure of the legislature to exclude from the provisions of the Youthful Offenders Act, ch. 54, Stats. (1975), reprehensible crimes other than those for which the penalty was life imprisonment, the court responded, "a classification having some reasonable basis does not offend ... [the equal protection clause] merely because it is not made with mathematical nicety or because in

practice it results in some inequality." *Hilber v. State,*
89 Wis. 2d 49, 57, 277 N.W.2d 839 (1979) (quoting
*Morey v. Doud,* 354 U.S. 457, 463 (1957)).

In *Omernik,* 64 Wis. 2d at 20, the court similarly
expressed its refusal to find legislation unconstitution-
al where a classification was challenged on the ground
that it did not precisely meet the contours of legitimiz-
ing rational basis. The court in *Omernik* acknowl-
edged that the rational basis justifying a statutory
regulation of water diversion for three categories of
water use might apply equally to a fourth category of
use. Nevertheless, rather than seeking to construct a
rational basis for the failure of the legislature to
include this fourth category within the purview of the
statute, the court adhered to its previously articulated
rule of deferring to the judgment of the legislature:

> "[I]t is not required that all ills or ailments be
> cured or their cure attempted in a single piece of
> legislation. ... We hold the legislative classification
> here to have a reasonable basis, repeating that,
> within the limits of what is reasonable, '... it is for
> the legislature and not for the court to determine
> the exact point at which a classification is to
> operate.'" *Id.* (quoting *State ex rel. Harvey v.
> Morgan,* 30 Wis. 2d 1, 9, 139 N.W.2d 585 (1966)).

*See also In Matter of Guardianship of Nelson,* 98 Wis.
2d 261, 271, 296 N.W.2d 736 (1980); *City of Madison v.
Schultz,* 98 Wis. 2d 188, 212, 295 N.W.2d 798 (Ct. App.
1980) (as to the fact that massage establishments are
regulated while other commercial sex businesses are
not, the court of appeals held: "This is a matter of
legislative judgment. Legislation may properly pro-
ceed piecemeal depending on the seriousness of the

evil presented in a particular industry or occupation.").

Finally, the United States Supreme Court very recently stated with respect to an equal protection claim: "It of course is possible that Mississippi might have enacted a statute that more precisely serves these goals and these goals only; as we frequently have explained, however, a state statute need not be so perfectly calibrated in order to pass muster under the rational basis test." *Bankers Life and Casualty Co. v. Crenshaw,* 56 U.S.L.W. 4418, 4422 (May 16, 1988). *See also Bowen v. Owens,* 476 U.S. 340, 348 (1986). For these reasons, we are satisfied that the classification contained in sec. 102.29(3) accomplishes its objectives with a constitutionally adequate degree of precision. We agree with the court of appeals that the distinction between third parties responsible for an original injury and third parties who have aggravated an injury caused by the employer supports the classification distinguishing physicians, chiropractors, and podiatrists from other third parties. While the classification would perhaps have met this rational basis more completely had all health care providers been included within sec. 102.29(3), to sustain the legislature's omission of precision, it is enough to note that this court has consistently refused to find legislation unconstitutional where a classification is not all-encompassing or evinces a cautious intent to develop a classification on a piecemeal basis.

Moreover, were it necessary for this court to find a rational basis to support not only the classification distinguishing physicians, chiropractors, and podiatrists from third parties generally, but also to locate a rationale for the omission of additional health care

providers within the subrogation bar of sec. 102.29(3), such a rational basis for this "subclassification" could be found. Specifically, we observe that elsewhere within the ch. 102 worker's compensation scheme provisions regarding health care refer exclusively to physicians, chiropractors, and podiatrists. The following sections demonstrate a scheme throughout ch. 102 indicating a legislative determination that physicians, chiropractors, and podiatrists are generally the best equipped to assess disability and to treat work-related injuries: Section 102.13, Stats. (employer's right to require examination of employee by physician, chiropractor, or podiatrist); sec. 102.17(1)(e) and (g) (department of industry, labor and human relations right to direct an employee to be examined by physician, chiropractor, or podiatrist); sec. 102.42(2) (requirement that employer offer to employee choice of any physician, chiropractor, or podiatrist practicing in this state). Significantly, chiropractors and podiatrists were included within sec. 102.29 as well as within each of these provisions as a result of the same legislation adopted under ch. 147, laws of 1975. We note that Racine Steel has directed the court's attention to several sections in ch. 102 which include provisions regarding additional health care providers.[3] However, these tangential references to addition-

---

[3]Those provisions set forth by Racine Steel include the following: sec. 102.13(2) (requirement that treating "physician, chiropractor, podiatrist, hospital or health care provider" provide information relating to work-related injury); sec 102.16(3) (bars employer solicitation or requirement that employee or other person purchase "medical, chiropractic, podiatric or hospital tickets or contracts" for medical, surgical, hospital or other health care treatment); sec. 102.42(1) (employer required to provide medical, surgical, chiropractic, podiatric and hospital treatment,

al health care services and providers do not detract from the fundamental scheme highlighting physicians, chiropractors, and podiatrists as the health care providers fundamental to the assessment and treatment of work-related injuries or consequential disability. None of the statutory sections cited by Racine Steel creates obligations on the part of the employee to submit to examination by an additional health care provider nor do these sections specifically identify any additional medical practitioners whose services must be provided by the employer to the employee. As such, these provisions are not as fundamentally related to the assessment and treatment of work-related injuries as are those which do exclusively pertain to physicians, chiropractors, and podiatrists.

This scheme, embodied within ch. 102, setting apart physicians, chiropractors, and podiatrists from other health care providers, does have a rational basis: the health care providers specified in sec. 102.29(3) typically perform more invasive and potentially injurious procedures. This rational basis justifies the subclassification which, while imperfect, sets apart these practitioners with respect to the fact that they are generally the best equipped regarding the assess-

medicines and supplies). Additionally, Racine Steel refers to sec. 102.17(1)(d). Section 102.17(1)(d), Stats. (1981–82), refers to the admission of the contents of verified medical and surgical reports prepared by physicians, podiatrists, surgeons, chiropractors, and dentists. The current statute, in effect at the date of Hardy's injury, additionally includes psychologists within sec. 102.17(1)(d), Stats. (1985–86). With respect to this statute, it should be first noted that surgeons are physicians such that the reference to surgeons is not to an additional health care provider. Second, it is important to recognize that the reports of doctors of dentistry are admissible regarding diagnosis but not disability.

ment of disability, treatment of work-related injury, and concomitant greater likelihood of injury in the event of malpractice.

It may indeed have been the intent of the legislature in structuring the subclassification of health care providers to permit the employee to retain the entirety of a malpractice award where the injury resulting from the aggravation was more likely to be severe in order to compensate for the fact that the employer was responsible for the original injury and the employee would not be fully compensated with worker's compensation benefits. Accordingly, even if it were necessary to examine sec. 102.29(3) not only for a rational basis for the primary classification, but also to find a rational basis for the subclassification created by the purportedly underinclusive classification, there is ample justification to support the inclusion of physicians, chiropractors, and podiatrists and exclusion of other health care providers under sec. 102.29(3). For all the above reasons, we find sec. 102.29(3), Stats., to be constitutional.

*By the Court.*—The decision of the court of appeals is reversed.